BERNARD McKENNA, PLAINTIFF IN ERROR, *v.* CHARLES B. FISK, DEFENDANT.

After pleading the general issue, it is too late to take advantage of a defect in the writ, or a variance between the writ and declaration.

Actions of trespass, except those for injury to real property, are transitory in their character.

Where the writ mentions a trespass with force and arms upon the storehouse of the plaintiff and a seizure and destruction of goods, it covers a transitory as well as a local action.

In transitory actions, a venue is laid to show where the trial is to take place. It is a legal fiction, devised for the furtherance of justice, and cannot be traversed.

In such actions, such a venue is good without stating where the trespass was in fact committed, with a *scilicet* of the county in which the action is brought.

In the absence of statutory provisions, the courts in the District of Columbia must apply the principles of the common law to such actions, the pleadings, and the proofs.

THIS case was brought up by writ of error from the Circuit Court of the United States for the District of Columbia and county of Washington.

In the trial of the cause in the court below, the whole of the evidence offered by the plaintiff was shut out by a decision of the court, and the question was solely upon the correctness of this opinion.

The writ was as follows:

The United States of America, to the Marshal of the District of Columbia, greeting:

We command you, that you take Charles B. Fisk, late of Washington county, if he shall be found within the county of Wash-

ington, in your said district, and him safely keep, so that you have his body before the Circuit Court of the District of Columbia, to be held for the county aforesaid, at the city of Washington, on the fourth Monday of November next, to answer unto Bernard McKenna, in a plea, wherefore, with force and arms, &c., at the county of Allegany; in the state of Maryland, to wit, at the county of Washington, he broke into the storehouse of the said Bernard, and seized, took, detained, and destroyed the goods and chattels, and articles of household of the said Bernard, then and there found, and being of a large value, and other wrongs to the said Bernard then and there did, against the peace, dignity, and government of the United States, &c. Hereof fail not at your peril, and have you then and there this writ.

Witness, Wm. Cranch, Esq., Chief Judge of our said court at the city of Washington, the 1st day of May, Anno Domini, one thousand eight hundred and forty.

Issued the 27th day of May, 1840.       Wm. Brent, *Clk.*

The declaration was as follows:

Nar.

*Washington County, District of Columbia, to wit:*

Charles B. Fisk, late of the county of Washington aforesaid, yeoman, was attached to answer unto Bernard McKenna, in a plea wherefore, with force and arms, &c., at the county of Washington aforesaid, he broke into the storehouse of the said Bernard, and seized, took, detained, and destroyed the goods, chattels, and articles of household of the said Bernard, then and there found, and being of a large value, and other wrongs to the said Bernard then and there did, against the peace, dignity, and government of the United States, and to the great damage of the said Bernard.

And thereupon, the said Bernard, by Brent and Brent, his attorneys, complains, that the said Charles, heretofore, to wit, on the — day of September, in the year of our Lord eighteen hundred and thirty-nine, at the county of Washington, in the District of Columbia, with force and arms, &c., seized, took, detained, and destroyed the goods and chattels, to wit, one thousand gallons of spirituous liquors of different kinds; a large quantity of coffee and of tea; various clothing ready made for sale; two hundred bushels of Indian corn; all the promissory notes and accounts of

*McKenna v. Fisk.*

sundry persons due to the said Bernard, to the amount of at least $400; all the furniture, bedding, and other articles in said store-house; and also the shantee, or storehouse, in which said goods and chattels then and there were found; the said shantee or store-house being a temporary building erected by said Bernard, and to be removed by him, and not being part of, or attached to, the freehold or real; all of said goods and chattels, bills, bonds, and accounts belonging to the said Bernard, then and there found; and being of a large value, to wit, of the value of $2000, and carried away and destroyed the same, and converted the same to his own use, and other wrongs to the said Bernard then and there did, against the peace, government, and dignity of the United States, &c. And also, for that the said Charles, to wit, on or about the — day of September, 1839, with force and arms, &c., at the county of Washington, in the District of Columbia, broke and entered a certain other shantee or temporary storehouse of the said Bernard, situate and being in said county of Wash-ington, and then and there made a great noise and disturbance therein, for a long space of time, and then and there forced and broke open, broke to pieces, damaged, and destroyed divers, to wit, bottles, barrels, hogsheads, jugs, and demijohns, containing one thousand gallons of spirituous liquor of different kinds, of, and belonging to, the said Bernard, and broke to pieces, destroyed, damaged, and spoiled divers, to wit, one thousand pounds of cof-fee; two hundred pounds of tea; one hundred suits of ready-made clothing; two hundred bushels of Indian corn; sundry promissory notes, bonds, bills, and accounts due to said Bernard from sundry persons; and also, sundry planks, timbers, shingles, and other materials in the construction of a certain shantee, also belonging to the said Bernard, then and there found, and of great value, to wit, of the value of $2000, and other wrongs to the said Bernard then and there did, against the peace, government, and dignity of the United States, &c.

And also, during the time aforesaid, to wit, on the day and year aforesaid, at the county aforesaid, seized and took divers other goods and chattels, to wit, one thousand gallons of spiritu-ous liquors of different kinds; a large quantity of coffee and tea; two hundred bushels of Indian corn; $400 in amount of pro-missory notes, bonds, bills, and accounts due to said Bernard by

different persons; sundry ready-made clothing; and also a certain shantee, all of the goods and chattels, promissory notes, bonds, bills, and accounts of the said Bernard, then and there found, and being of great value, to wit, of the value of $2000, and damaged, spoiled, and destroyed the same, and other wrongs to the said Bernard then and there did, against the peace, government and dignity of the United States. By means of which said several premises, he the said Bernard saith, he is worse, and hath damage of $4000, and therefore he brings suit, &c.

BRENT AND BRENT, *for plaintiff.*

*John Doe and Richard Roe,* Pledges, &c.

And the bill of exceptions was as follows:

### *Plaintiff's Bill of Exceptions.*

Bernard McKenna
v.
Charles B. Fisk.

At the trial of this cause, the plaintiff, to support the issue on his part joined, offered to give evidence by a competent witness, tending to prove that in the summer of the year 1839, the defendant, with a large force of armed men, came to the shantee, or storehouse, of the plaintiff, in Allegany county, in the state of Maryland, a place not within the jurisdiction of this court, and entered into the same, and then and there seized, took, and carried away the goods and chattels stated in the declaration, and at the same time offered to prove that the said shantee or storehouse was erected by the plaintiff for the purpose of carrying on his trade in merchandise on the line of the Chesapeake and Ohio canal, in said county, at, or near a place called Fifteen Mile Creek; and that, by the usage and practice on the said line of said canal, said shantees were considered temporary buildings, and could be removed or sold at the will and pleasure of the person erecting them; and that the said shantee of the plaintiff was a frame house and had posts in the ground.

And farther offered to give evidence, at the same time, to show the value of said goods and chattels and shantee, at the time of such taking and carrying away and destruction thereof by the defendant and others, to be more than $1000; but the court would not allow the plaintiff to give such offered evidence, or any part thereof, to the jury, but refused to permit the same to be

McKenna *v.* Fisk.

given; to which decision and refusal of the court, the plaintiff excepts, and this his bill of exceptions is signed, sealed, and en-- rolled, this 28th day of December, 1841.

W. CRANCH, [L. S.]

JAS. S. MORSELL. [L. S.]

Test: W. BRENT, *Clerk.*

*Brent* and *Brent,* for the plaintiff in error.

*Bradley* and *Coxe,* for the defendant.

*Brent,* for plaintiff. If there be a variance between the writ and declaration, advantage can only be taken of it by plea in abatement. 2 Wheat. 55. First and third counts relate to personal property; second count charges an entry, but also injury to the personalty. Precedents in 2 Chitty's Pleading, 864, and 1 Evans's Harris, 524; cited also Comberback, 324. There is no misjoinder, 1 Chitty on Pleading, 394, edition of 1819; cited also, 1 Durnf. and East, 479; 1 Cowp. 171; case in Cowper since overruled, but not as to the question of pleading. Distinction between transitory and local actions, 1 Cowp. 177, 179; 1 Strange, 646. In 4 Durnf. and East, 503, there was a count for asportation of goods, but plaintiff nonsuited, because there was no proof. 1 Brock. Rep. 208; 1 Carth. 131; 2 Williams's Saund. Rep. 72, note; 2 Peters, 145, where a building erected for purposes of trade is said not to be real estate; 1 Saunders's Plead. 415; 2 Saund. Rep. 74 (a); Rep. Temp. Hard. 121.

*Bradley,* for defendant, cited 3 B. C. 393; 1 Chitty's Pl. 438; 2 Wilson, 394. After party has appeared, the writ is dead. 1 Bos. and Pul. 647. Suppose declaration good; can it be sustained by proof of an injury committed in Maryland? 1 Taunt. 379. This is essentially an action of trespass *quare clausum fregit.* 2 Saund. Pl. and Ev. 858, marginal page; 1 Chitty's Pl. 271.

*Coxe,* on same side, insisted that this was essentially an action of trespass *quare clausum fregit,* and that the injuries laid were merely aggravation. Case in 2 Peters only decided the interest between landlord and tenant, and not that the latter was unable to bring trespass for an injury to his possession.

*Brent,* sen., in conclusion. Only the second count refers to the storehouse. the first and third are for injuries to the personalty. The second is copied exactly from Evans's Harris.

x 2

Mr. Justice WAYNE delivered the opinion of the court.

The declaration in this case contains three counts. It is alleged in the first and third, that the defendant, with force and arms, in the county of Washington, seized, took, detained, and destroyed the goods and chattels belonging to the plaintiff, and also the shantee or storehouse in which the goods were found, of the value of $2000. The only difference in the counts is in the specification of the goods destroyed. In the second count, the defendant is charged with having, with force and arms, in the county of Washington, broke and entered a certain other shantee or temporary storehouse of the plaintiff, situate and being in the county of Washington.

The defendant pleaded not guilty, and issue was joined on that plea.

The plaintiff, on the trial, in support of his case, offered evidence to prove, that the defendant, with a large force of armed men came to the storehouse or shantee of the plaintiff, in Allegany county, Maryland, entered into the same, and took and carried away the goods and chattels stated in the declaration, &c., and other evidence was offered to show the value of the goods. The court refused to permit the evidence to be given to the jury. Upon an exception to this ruling, the case is now before this court.

It was first urged in argument, that as the original writ in the case declared that the defendant, with force and arms, &c., broke into the storehouse of the plaintiff, &c., it was such a declaration of the nature of the complaint, which the defendant was required to answer, that it must be considered as the gist of each count, and that there was such a variance between the counts and the writ that it would abate the writ. Admit that this fault exists, and that the nature of the plaintiff's demand must be mentioned in the writ, that the defendant may know before he appears in court the kind of complaint he is required to answer, and that the declaration afterwards filed, or the writ, or both, shall be deficient in some legal requisite, or shall contain irregularity, informality, or mistake, which would abate the writ, the defendant is not here in a situation to avail himself of the fault. He has pleaded not guilty. This plea refers to the counts and not to the writ. It puts the plaintiff to prove the material allegations in his declaration, and the defendant assumes by it to contest them.

To allow, then, a defendant, after the general issue has been pleaded, to avail himself of any defect or mistake in the writ, or variance or repugnancy between the count and the writ, would be, not to. try the cause at issue, but would have the effect to take it from the jury and to place it before the court, upon a point of pleading which has not been pleaded, and which is unconnected with the merits of the cause. Such mistakes, either in the writ, or in a variance between the count and the writ, must be taken advantage of by a plea in abatement. And if the mistake or fault is apparent on the face of the declaration, such as a misstatement of the cause of action, it will be a good cause of demurrer. 3 Black. Com. 301; Com. Dig. Abatement, G, I, 8; Willes, 410; 1 Show. 91; 1 Salk. 212; Duvall and Craig, 2 Wheat. 45, 55. The case, then, is not in a condition to enable the defendant to avail himself of the objection. But is there any such variance in this case. We think not. The writ mentions a trespass with force and arms upon the storehouse of the plaintiff, and the seizure and destruction of goods. This puts the defendant in possession of the complaint against him, or what he will be required to answer before he appears in court. It is but the commencement of the suit, and is sufficient, if it advises the defendant of the cause of action, without those particulars which must be set out in the declaration, which, when filed, gives the defendant an opportunity to use any of those defences or pleas to which he may be entitled by the rules of pleading.

It was also urged that the venue laid in each of the counts was so imperfect that the evidence offered could not be received to support either of them. That it could not be received under the second count, for that was *quare clausum fregit* in the county of Washington, and the evidence proved a local trespass, within another jurisdiction or sovereignty; and that it could not be received under the first and third counts; because, though they might be counts, for transitory causes of action, it was necessary to lay a venue where the trespass was committed with a *scilicet*, to let in the evidence at any other place of trial. The evidence offered as to the local count was certainly not competent; but that is because the venue is local, and cannot be changed into any other county than where the trespass to the realty was done, and never can be carried out of the sovereignty in which the

land is. But it is an established rule, that in transitory actions a venue is only necessary to be laid to give a place for trial. Such a venue is indispensable, for without it would not appear in what county the trial was to take place, nor could a jury be summoned to try the issue. Com. Dig. Pleader, C, 20; 1 Cowp. 176, 177; 5 Term Rep. 620; 2 Lev. 227; Bacon's Ab. Venue, C; 3 Term Rep. 387. The venue for trial is a legal fiction, devised for the furtherance of justice, and cannot be traversed. So that, if A becomes indebted to B, or commits a tort upon his person or upon his personal property in Paris, an action in either case may be maintained against A in England, if he is there found, upon a declaration alleging a cause of action to have occurred in an English county, in which the action is laid, without taking notice of the foreign place. 1 Cowp. 177—179. Lord Mansfield said: But as to transitory actions, there is not a colour of doubt but that any action which is transitory may be laid in any county in England, though the matter arises beyond the seas. Mostyn v. Fabrigas, 1 Cowp. 161. In Doulson v. Matthews and another, 4 D. and East, 503, (a case in all its particulars like this,) which was an action for entering the plaintiff's house in Canada and expelling him, and in which there was a count for taking away his goods, Lord Kenyon nonsuited the plaintiff because the first count was local, and because he had not supported his second count by proof. Buller, Justice, also said: It is now too late for us to inquire whether it was wise and politic to make a distinction between transitory and local actions: it is sufficient for the courts, that the law has settled the distinction, and that an action *quare clausum fregit* is local. We may try actions here, which are in their nature transitory, arising out of a transaction abroad; but not such as are in their nature local. In Rafael v. Verelst, 2 W. Black. 1055, which was a trespass committed in the dominions of a foreign prince, De Grey, Chief Justice, said: Crimes are, in their nature local, and the jurisdiction of crimes is local. And so as to the rights of real property, the subject being fixed and immovable. But personal injuries are of a transitory nature, and *sequuntur forum rei.* And though in all declarations of trespass it is laid *contra pacem regis,* yet that is only matter of form and not traversable. The same doctrine in respect to local and transitory actions has been repeatedly affirmed in the courts

McKenna *v.* Fisk.

of the states of this Union. 1 Stra. 646; 2 W. Black. 1070; 1 Cowp. 176; 4 Term Rep. 503—507; Cowp. 587; 6 East, 598, 599; Com. Dig. Action, 177; 1 Cowp. 161, 177, 178, 184, 344; 2 H. Black. 145, 161; Co. Litt. a, n. 1; 3 Term Rep. 616; 7 Term Rep. 243; 1 Saund. n. 2; Glen *v.* Hodges, 9 Johns. 67; Gardner *v.* Thomas, 14 Johns. 134. It then appears from our books, that the courts in England have been open in cases of trespass other than trespass upon real property, to foreigners as well as to subjects, and to foreigners against foreigners when found in England, for trespasses committed within the realm and out of the realm, or within or without the king's foreign dominions. And it also appears from the authorities which have been cited, that in a transitory action of trespass, it is only necessary to lay a venue for a place of trial, and that such venue is good without stating where the trespass was in fact committed, with a *scilicet* of the county in which the action is brought.

The courts in the District of Columbia have a like jurisdiction in trespass upon personal property with the courts in England and in the states of this Union, and in the absence of statutory provisions, in the trial of them must apply the same common law principles which regulate the mode of bringing such actions, the pleadings, and the proof. It is our opinion, that the exception taken by the plaintiff to the ruling of the court, in respect to the evidence excluded, must be sustained, and we direct the cause to be remanded for further proceedings.

### ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be and the same is hereby reversed, with costs, and that this cause be and the same is hereby remanded to the said Circuit Court, with directions to award a *venire facias de novo.*