Argued September 29, dismissed October 19, rehearing denied November 9, 1915.

# MONTESANO LUMBER CO. v. PORTLAND IRON WORKS.

### (152 Pac. 244.)

**Sales—Conditional Sales—Recording—Place for Recording.**

1.   Under Rem. & Bal. Code Wash., Section 3679, providing that articles of incorporation shall state the name of the city, town or locality and county in which the principal place of business of the company is to be located, and Section 3670, providing that conditional sales shall be absolute as to purchasers in good faith unless within ten days after taking possession by the vendee a memorandum of the sale shall be filed in the auditor's office of the county wherein the vendee resides, and the decisions of the Supreme Court of Washington that the residence of a corporation is the city and county named in its articles of incorporation as its principal place of business, a conditional sale to a Washington corporation of machinery and equipment to be installed in a sawmill was void as against a purchaser in good faith, where, though the contract was recorded in the county in which the sawmill was situated, it was not recorded in the county designated in the articles of incorporation as the principal place of business of the corporation.

**Sales—Conditional Sales—Recording—"Purchaser."**

2.   Where, under a lease of a sawmill, the lessee was to pay a specified monthly rental, and pay $10,000 in advance in machinery and equipment, and it was provided that upon the installation of such machinery and equipment it should be and become the property of the lessor, the title to the machinery and equipment vested in the lessor at the moment it was installed by the terms of the lease, whether or not it was so permanently attached to the building as to become a fixture, and the lessor was a "purchaser" thereof within Rem. & Bal. Code Wash., Section 3670, making conditional sales absolute as to purchasers unless a memorandum of the sale is filed in the auditor's office of the county of the vendee's residence.

[As to when person holding property under conditional sale may transfer a perfect title, see note in 134 Am. St. Rep. 277.]

**Courts—Local and Transitory Actions—Actions for Injuries to Real Property.**

3.   An action for trespass on real property being local an action for an injury to real property in the State of Washington cannot be maintained in the courts of Oregon, especially in view of Section 42, L. O. L., providing that an action for injuries to real property shall be commenced and tried where the property is situated; this being a tacit recognition of the common-law rule as to this class of actions.

**Courts—Local and Transitory Actions—Actions for Injuries to Real Property.**

4.   A complaint alleged that plaintiff owned a sawmill which it leased to certain parties who agreed to purchase and install certain

machinery, tools, etc., and that the machinery, when so established, should become a part of the realty and the property of plaintiff; that for the purpose of complying with the lease the lessee's assignee purchased of defendant certain machinery, tools, etc.; that such machinery, tools, etc., were sold and delivered to the assignee, and by the assignee duly installed in the mill, and became a part thereof and affixed and attached thereto; that defendant entered upon such mill premises and tore down and dismembered the sawmill, and took therefrom such machinery, tools, etc., which were then necessary for the operation of the mill, and, having dismantled the mill and torn and taken therefrom a large amount of the machinery, tools, etc., took away all such machinery, tools, etc.; that by such action the sawmill and sawmill plant was made useless and worthless, and it had become impossible to operate it; that the machinery, tools, etc., which defendant left in the mill were useless and practically without value; and that by the wrongful and unlawful action of the defendant plaintiff had been damaged in the sum of $10,-000. There was no allegation that the machinery carried away was of any particular value, but it was incidentally stated that it was of great value. Plaintiff introduced testimony as to the effect generally upon the mill of the removal of the machinery, and that defendant cut out some of the frames and timbers, tore up the mill in a general way, and nearly destroyed it so far as operating was concerned. *Held,* that the complaint stated a cause of action for an injury to real property within the rule that such actions are local, and not a cause of action to recover the value of personal property taken and converted by defendant, and, moreover, the action was tried as one for trespass to real property.

[As to jurisdiction of courts over transitory causes of action, see note in 59 Am. St. Rep. 869.]

#### Courts—Jurisdiction—Waiver by Failure to Demur.

5. Under Section 72, L. O. L., providing that, if no objection be taken either by demurrer or answer, defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the court and the objection that the complaint does not state a cause of action, an objection to the court's jurisdiction of an action for injuries to real property in another state was not waived by the failure to demur to the complaint, but might be raised at any time.

#### Courts—Jurisdiction—"Circuit Court."

6. Under the constitutional provision investing the Circuit Courts with general jurisdiction to be defined, limited and regulated by law, such courts are common-law courts, and any extraordinary jurisdiction not in the course of the common law must come from either the Constitution or the statutes.

#### Judgment—Conformity to Pleadings.

7. In an action for an injury to real property by removing machinery from a sawmill, plaintiff cannot recover for the taking and conversion of personal property.

## From Multnomah: GEORGE N. DAVIS, Judge.

Department 2.    Statement by MR. JUSTICE McBRIDE.

This is an action by the Montesano Lumber Com-
pany, a corporation, against the Portland Iron Works,
a corporation, for damages begun in the Circuit Court
of Multnomah County upon a complaint, the material
portions of which, after setting up the fact that the
plaintiff is a corporation organized and existing under
the laws of Washington, and that defendant is an Ore-
gon corporation, may be stated as follows:

"That at all of the times herein mentioned the said
plaintiff has been and it now is the owner of a certain
sawmill and sawmill site, hereinafter more particu-
larly mentioned and described, and located in the
county of Chehalis and State of Washington, and im-
mediately to the south of the City of Montesano, in
said county, and that on the eighteenth day of May,
1911, and prior thereto, there was located on the said
premises a sawmill, with sheds and other buildings,
and with various machinery incidental to the operation
of a sawmill, and on the date last above mentioned
the said plaintiff made and entered into a contract and
lease with J. W. Sumrall, A. B. Crosier and A. K
Foss, wherein and whereby the said plaintiff did lease
and let unto the said Sumrall, Crosier and Foss the
said premises for a period of three years, and under
the terms of the said instrument the said lessees agreed
to purchase and install on the said premises certain
valuable machinery, tools, implements, and appliances
therein particularly mentioned, *and that the said
machinery, etc., when so established, should be and
become a part of the said realty and a part of the said
sawmill and the property of the said plaintiff; and a
copy of which said contract and lease is hereunto at-
tached, marked Exhibit 'A' and made a part hereof;
that very shortly after the execution of the said lease,
the said lessees, by and with the consent of the said
plaintiff, sold and assigned said lease to the Montesano
Mill Company, a corporation under the laws of the
State of Washington.*"

In paragraph 3 it is asserted that:

The Montesano Mill Company, which for the purpose of avoiding confusion of names we will hereinafter style the tenant, "for the purpose of complying with the terms and provisions of said lease, * * purchased of defendant certain machinery, tools, implements, and appliances mentioned and described in the said lease [here follows a detailed list of the machinery, being identical with that which by the terms of its lease the tenant was obliged to place in the mill], all of which were of great value; *that during the late spring or early summer of 1911 the said machinery, tools, and implements and appliances were by the said defendant sold and delivered to the said Montesano Mill Company, and the same was thereafter by the said company duly installed in the said mill and became a part of the said mill and mill plant and affixed and attached thereto."*

Paragraph 4 alleges a forfeiture of the lease.

Paragraph 5 is as follows:

"That on or about the —— day of ——, 1913, the said defendant, acting by and through its officers, agents and employees, did unlawfully and wrongfully, and against the wishes and protests of the said plaintiff, *enter in and upon the aforesaid mill premises, and did unlawfully, and against the wishes and protests of the said plaintiff, tear down and dismember the said sawmill, and took therefrom the machinery, tools, implements, and appliances which it, the said defendant, had theretofore sold and delivered to the said Montesano Mill Company, and which the last-named company had long theretofore had installed in said mill, and which machinery, tools, implements, and appliances were at the time of the unlawful action of the said defendant, necessary for the operation of such mill, and the said defendant after having dismantled the said mill* and torn and taken therefrom a large amount of the machinery, tools, implements and appliances, did take away to places to the plaintiff unknown

all such machinery, tools, implements and appliances, all of which was done by the said defendant wrongfully and unlawfully and against the express wishes and protests of the said plaintiff."

The sixth paragraph states:

"That by the unlawful and wrongful action of the said defendant the said sawmill and sawmill plant of the plaintiff was made useless and worthless, and it has been impossible to operate the said sawmill because of the action of the said defendant, and the machinery, tools, implements and appliances which the said defendant left in and about the said mill were useless and practically without value, and that by the wrongful and unlawful action of the said defendant as aforesaid the said plaintiff has been damaged in the sum of $10,000."

Defendant answered, admitting its corporate existence and the ownership by plaintiff of the sawmill and site at Montesano, and denied every other allegation of the complaint. By way of further defense it alleged that in the months of May and June, 1911, it agreed to sell to the tenant the property described in the complaint by a conditional bill of sale. The substance of the conditional bill of sale was that the defendant should retain the ownership of the machinery until paid for, and it is in the usual form of such instruments. The answer alleges that the tenant has never paid for the machinery so delivered to it; that defendant did not have any notice or knowledge of the terms of the lease between plaintiff and its tenants until long after the conditional bill of sale was executed; that the conditional bill of sale recited that the tenant was a corporation residing at the City of Montesano, county of Chehalis, and State of Washington; that the principal place of business of plaintiff is in Montesano, Washington; that plaintiff did not enjoin nor attempt

to prevent defendant from running said property; that
the same was never in possession of plaintiff, and was
removed with its consent; that the tenant ordered to
the mill in machinery and other improvements prop-
erty which cost it more than $18,000. The plaintiff
replied to the new matter in the answer by admitting
that defendant, at or about the date mentioned in the
complaint, did enter into some kind of a contract for
the sale of certain sawmill machinery; that said con-
tract was recorded in the office of the county auditor of
Chehalis County, Washington; that such machinery
was placed in the mill; and that it constituted a part
or all of the machinery mentioned in the alleged condi-
tional sale contract. The following allegations and
denials then follow:

"That at the time of the giving of the lease men-
tioned in the complaint herein the said sawmill plant
had in it a large amount of regularly installed machin-
ery ready and prepared for operation; that when the
said Montesano Mill Company undertook to install the
new machinery provided for in the said lease and par-
ticularly the machinery removed by the defendant, the
former machinery in the mill was readjusted, parts of
it removed, thrown aside, and torn to pieces, in order
to install and put in operation such new machinery;
*that the said Montesano Mill Company, under and by
virtue of the provisions of the said lease, and for the
purpose of complying with the terms thereof, obtained
from the said defendant the machinery, tools, imple-
ments and appliances mentioned and described in the
complaint herein, and the same were installed in the
plaintiff's said mill and mill premises and became a
part of the fixed and stationary property of the said
mill and mill property; that under and by virtue of the
terms of the said lease, when the said machinery, etc.,
was installed, it became and remained the property of
the said plaintiff;* that under and by virtue of Section
3679 of Volume 2, Remington & Ballinger's Annotated

Codes and Statutes of the State of Washington, being a part of the statutes and laws of the State of Washington, it is provided, among other things, that persons desiring to form a corporation under the laws of the State of Washington shall make, execute and acknowledge, in triplicate, written articles of incorporation, one copy of which shall be filed with the Secretary of State of Washington, another copy of which shall be filed with the County Auditor of the county in which the principal place of business of the corporation is intended to be located, and the third copy to remain in the possession of the corporation, and which said statute further provides that the articles of incorporation shall state, among other things, 'the name of the city, town or locality and county in which the principal place of business of the company is to be located'; that the articles of incorporation so executed and filed by the said Montesano Mill Company expressly provided that its principal place of business was the City of Seattle, county of King, and State of Washington; that the only conditional sale contract or any written contract made as alleged in the answer or otherwise between the defendant and the said Montesano Mill Company concerning the sale and purchase of the said machinery was filed with the auditor of Chehalis County, and that no such instrument was at any time within the time provided by the laws of the State of Washington filed or recorded in the office of the auditor of the said King County, which was the principal place of business and residence of the said Montesano Mill Company; that Sections 3670 and 3671 of Volume 2 of the said Remington & Ballinger's Annotated Codes and Statutes of the State of Washington are with reference to the execution and filing of conditional sale contracts such as is pleaded in the answer herein, and which said Section 3670 is in the words and figures following, to wit: 'All conditional sales of personal property, or leases thereof, containing a conditional right to purchase, where the property is placed in the possession of the vendee, shall be absolute as to purchasers, encumbrancers and subsequent creditors in

good faith, unless within ten days after taking possession by the vendee a memorandum of such sale, stating its terms and conditions and signed by the vendor and vendee, shall be filed in the auditor's office of the county, wherein at the date of the vendee's taking possession of the property the vendee resides'— * * that the Supreme Court of the State of Washington, which is the highest court of the said state, has by its decisions heretofore rendered decided that the residence of a corporation under the provisions of the said Section 3670 is the city and county named in the articles of incorporation of such company as its principal place of business; that the said plaintiff at the time of the purchase and installation of the machinery mentioned and described in the complaint here had no knowledge whatsoever that the said Montesano Mill Company had purchased the said property upon a pretended or other manner of conditional sale, and the plaintiff never obtained any knowledge that the said defendant claimed that the said machinery was sold under conditional sale until long after the installation of the said machinery and long after the time provided by the statutes aforesaid of the State of Washington for the filing of such conditional sale contract; that if the machinery described in the complaint herein was sold upon a conditional sale contract, as alleged in the answer, the same was and is void as against this plaintiff, and as against this plaintiff and the defendant the plaintiff becomes the absolute owner of the said machinery, tools, implements, and appliances immediately upon the installation thereof in the said sawmill.''

Upon the trial the court instructed the jury to find for the plaintiff for the reasonable value of the machinery taken, and thereupon there was a verdict and judgment in its favor for the sum of $2,963, from which defendant appeals.

DISMISSED.    REHEARING DENIED.

For appellant there was a brief over the names of *Messrs. Wilson, Neal & Rossman* and *Mr. George F. Hopkins, Jr.,* with an oral argument by *Mr. A. King Wilson.*

For respondent there was a brief over the names of *Messrs. Bridges & Bruener* and *Messrs. Teal, Minor & Winfree,* with an oral argument by *Mr. J. G. Bridges.*

Mr. Justice McBride delivered the opinion of the court.

1, 2. Many specifications of error are assigned in the abstract, but only three are specified or discussed in the brief or at the hearing, and we shall therefore treat the others as waived. It is admitted that the laws of the State of Washington require that articles of incorporation shall specify the name of the city, town or locality in which the principal place of business of the company is to be located, and it is shown that the articles of the defendant's vendee so specified Seattle, in King County. It also appears that the Supreme Court of Washington has decided that the residence of a corporation is the city and county named in the articles of incorporation as its principal place of business. It is shown the laws of Washington require that all conditional sales of personal property, or leases thereof containing a conditional right to purchase when the property is placed in the possession of the vendee, shall be absolute to purchasers, incumbrancers and subsequent creditors in good faith, unless within ten days after the taking of possession by the vendee a memorandum of such sale, stating its terms and conditions, shall be filed in the auditor's office of the county wherein at the date of vendee's taking possession of the property the vendee resides. It is

also apparent that the conditional bill of sale was never recorded in King County, the vendee's legal residence, but was recorded in Chehalis County, where the mill was situated. From these facts it follows that, if plaintiff is a purchaser in good faith, the conditional bill of sale is void as to it, and it was the owner of the machinery at the time of defendant's alleged trespass. It is our opinion that the title to the property vested in plaintiff the moment it was installed in the mill. There was no constructive notice arising from the recording of the bill of sale in the wrong county, and there is no evidence that plaintiff had any actual notice of the conditional character of the transaction until nearly a year after the machinery was installed. The purport of the lease is that the lessee shall pay $300 per month as rent for the mill, that $10,000 shall be paid in advance in machinery and equipment to consist of certain articles specified in the lease, and that upon the installation of such machinery and equipment it shall be and become the property of the lessor. Aside, therefore, from the question of whether or not the machinery was so permanently attached to the building as to become a fixture, and consequently a part of the realty, it became plaintiff's property by the terms of the lease. Plaintiff was a purchaser within the meaning of the statute quoted. The consideration paid was the giving of the lease and putting the lessee into possession of a valuable mill.

3. So far, then, plaintiff has shown a right to recover damages unless defendant's contention that this is an action to recover for injuries to real property has been sustained. It is the almost universal holding in this country that an action for trespass on real property is local, and can be maintained only in the state or county where the injury occurred, and that a court

foreign to the place of injury is without jurisdiction to determine such a controversy. Such was the common-law rule as is conclusively demonstrated in the opinion of Lord Chancellor Herschell in the great case of the *British South Africa Co.* v. *Companhia de Mocambique,* [1893] App. Cas. 602, where the whole subject was thoroughly gone over in view of supposed changes made by the English reformed procedure. In the United States the holding to the same effect has been almost unanimous. *Ellenwood* v. *Marietta Chair Co.,* 158 U. S. 105 (39 L. Ed. 913, 15 Sup. Ct. Rep. 771), was a case practically coinciding with the case at bar. The complaint alleged that on January 1, 1875, and on divers other days, etc., sundry persons, knowing the land and timber thereon to be the plaintiff's property, without any right or authority from him, and at the instance and for the use and benefit of the defendant, cut down, removed and sawed into logs a large quantity of the timber, and the defendant, knowing the logs to be cut from the land, and both land and logs to be Bailey's property, took the logs into its possession and converted them to its own use. There was no demurrer or plea to the jurisdiction, and an answer was filed to the merits, but thereafter the court ordered that the action be abated and stricken from the docket. Upon the appeal Justice Gray said:

"Various grounds taken by the defendant in error in support of the judgment below need not be considered, because there is one decisive reason against the maintenance of the action. By the law of England, and of those states of the Union whose jurisprudence is based upon the common law, an action for trespass upon land, like an action to recover the title or the possession of the land itself, is a local action, and can only be brought within the state in which the land lies: *Livingston* v. *Jefferson,* 1 Brock. 203 [Fed. Cas.

No. 8411]; *McKenna* v. *Fisk,* 1 How. 241, 247 [11 L. Ed. 117]; *Northern Indiana R. R.* v. *Michigan Central R. R.,* 15 How. 233, 242, 251 [14 L. Ed. 674]; *Huntington* v. *Attrill,* 146 U. S. 657, 659, 670 [36 L. Ed. 1123, 13 Sup. Ct. Rep. 224]; *British South Africa Co.* v. *Companhia de Mocambique,* [1893] App. Cas. 602; *Cragin* v. *Lovell,* 88 N. Y. 258; *Allin* v. *Connecticut River Lumber Co.,* 150 Mass. 560 [23 N. E. 581, 6 L. R. A. 416]; *Thayer* v. *Brooks,* 17 Ohio, 489, 492 [49 Am. Dec. 474]; Kinkead's Code Pleading, § 35. The original petition contained two counts, the one for trespass upon land and the other for taking away and converting to the defendant's use personal property; and the cause of action stated in the second count might have been considered as transitory, although the first was not: *McKenna* v. *Fisk,* above cited; *Williams* v. *Breedon,* 1 Bos. & P. 329. But the petition, as amended by the plaintiff, on motion of the defendant, and by order and leave of the court, contained a single count, alleging a continuing trespass upon the land by the defendant, through its agents, and its cutting and conversion of timber growing thereon. This allegation was of a single cause of action, in which the trespass upon the land was the principal thing, and the conversion of the timber was incidental only, and could not, therefore, be maintained by proof of the conversion of personal property without also proving the trespass upon real estate: *Cotton* v. *United States,* 11 How. 229 [13 L. Ed. 675]; *Eames* v. *Prentice,* 8 Cush. [Mass.] 337; *Howe* v. *Willson,* 1 Denio [N. Y.] 181; *Dodge* v. *Colby,* 108 N. Y. 445 [15 N. E. 703]; *Merriman* v. *McCormick Co.,* 86 Wis. 142 [56 N. W. 743]. The entire cause of action was local. The land alleged to have been trespassed upon being in West Virginia, the action could not be maintained in Ohio. The Circuit Court of the United States sitting in Ohio had no jurisdiction of the cause of action, and for this reason, if for no other, rightly ordered the case to be stricken from its docket, although no question of jurisdiction had been made by demurrer or plea: *British South Africa Co.* v. *Com-*

*panhia de Mocambique*, [1893] App. Cas. 602, 621; *Weidner* v. *Rankin*, 26 Ohio St. 522; *Youngstown* .v. *Moore*, 30 Ohio St. 133; Ohio Rev. Stats., § 5064.''

Other cases to the same effect are *Du Breuil* v. *Pennsylvania Co.*, 130 Ind. 137 (29 N. E. 909); *Brown* v. *Irwin*, 47 Kan. 50 (27 Pac. 184); *Morris* v. *Mo. Pac. Ry. Co.*, 78 Tex. 17 (14 S. W. 228, 22 Am. St. Rep. 17, 9 L. R. A. 349); *Hill* v. *Nelson*, 70 N. J. Law, 376, (57 Atl. 411); *Karr* v. *N. Y. J. F. Co.*, 78 N. J. Law, 198 (73 Atl. 132); *Allin* v. *Connecticut River Lumber Co.*, 150 Mass. 560 (23 N. E. 581, 6 L. R. A. 416); *Smith* v. *Southern Ry. Co.*, 136 Ky. 162 (123 S. W. 678, 26 L. R. A. (N. S.) 927). In a note to the latter case, as reported in L. R. A., is found cited a great number of authorities holding the views above indicated; and, since the common law prevails in this state, except where modified by statute or unadapted to our conditions, which is not the case here, we feel constrained to follow this construction. A contrary view is taken by the Supreme Court of Minnesota in *Little* v. *Chicago etc. Ry.*, 65 Minn. 48 (67 N. W. 846, 60 Am. St. Rep. 421, 33 L. R. A. 423). The opinion is strong and plausible, but it is by a divided court, and the dissenting opinion by Justice BUCK, presenting strong and cogent reasons why the rule of the common law should be adhered to, among other things, observes:

''As a matter of policy, citizens of other states should not be permitted the use of our courts to redress wrongs and injuries to real property committed within their own territory. That is not what our courts were created or organized for. Nonresidents should not be invited to bring to our courts litigation arising over injuries to real property outside of our territorial limits. Certainly there is nothing in our Constitution or laws which justifies them in imposing the burden of maintaining courts at our expense for

their use and benefit. Protection of our own citizens is the primary object and duty of our own courts, and it is, to say the least, a very generous and liberal interpretation of the law which accords to suitors residing in other states the right to litigate in our courts questions of injury to real estate there situate, while the courts of those states reject the claim of our own citizens to litigate there injury to real estate situate here, notably the adjoining State of Wisconsin, which adjoins our state, and where the subject matter of this litigation is situated. It is clearly against our interests that those living in the State of Wisconsin near the division line should be encouraged in this class of litigation because our laws may be more favorable as to the rules of evidence, or for any other cause, and thus necessitate taxation of our people that nonresidents may have a forum to litigate that which ought to be, and is, a local action in the State of Wisconsin. Our citizens have no such right in the courts of Wisconsin. Comity should be reciprocal, and this can be more properly obtained by legislative enactments of the respective states than by an interpretation in direct conflict with the almost universal judicial decisions elsewhere. But I should seriously doubt the wisdom of any such enactment. It might, perhaps, prevent the miscarriage of justice in some cases, but it would aid such miscarriage in many instances.''

Further on in the opinion the same justice observes:

''Again, suppose the courts of California should adopt the doctrine of the majority opinion, and one of our citizens should visit that state for pleasure, health, or business, and is there sued by someone claiming that lands belonging to him situate here have been damaged by such citizen of Minnesota, would it not seem a miscarriage of justice that the trial in such case must take place thousands of miles away from the man's home, and from the situs of the property alleged to have been injured? The hardship of such a proceeding would seem to be intolerable, and I can-

not give my assent to any such doctrine, whatever
may be the rule as to the trial of actions upon volun-
tary contracts between parties; and I prefer that the
rule should be that for injuries to real property the
jurisdiction of our courts should only be coextensive
with its territorial sovereignty.''

In short, there is no such preponderance of calam-
ities arising from adherence to the common-law rule
as would justify this court in judicially repealing it.
Once the bars are let down citizens of New York
temporarily sojourning in Portland may litigate in
our courts and at the expense of our taxpayers causes
of action for injuries to real property situated in their
home state just as a citizen of Minnesota could, under
the case above cited, sue a citizen of Oregon passing
through St. Paul on his way East for injuries to
real property situated in Portland, and compel him
to bring his witnesses many hundred miles to defend.
The fact generally is that witnesses to injuries to real
property must usually be obtained in the vicinity of
the place where the injury occurred, and such locality
is therefore the natural and logical place for trial.
Instances may occur where a person having no prop-
erty in a state may commit an injury to real property
therein and leave the state, thereby defeating a re-
covery, but it is rarely the case that serious injury
may be perpetrated with such expedition and secrecy
as to prevent an action being begun and service of
summons upon him. The present case is a fair illus-
tration of this. The defendant went openly and con-
sumed several days in taking the machinery out of the
mill. The plaintiff was there and knew defendant
was removing it, and could have enjoined it before any
great damage had been done, or could have replevined
the machinery before it was shipped; but, instead of

doing this, it contented itself with serving a written protest and permitted the spoiliation to go on. If it slept on its rights, it should not now be heard to complain that it has lost its remedy, which as we shall presently show, it has not so far as an action of trover will give it a remedy.

4. In this connection we will consider the contention of plaintiff that this is not an action for injury to real property, but to recover the value of personal property taken and converted by defendant. It may be premised that every complaint must proceed upon a theory and must be good upon that theory, or it will be insufficient, and no recovery can be had upon a theory different from that upon which the pleading is framed: 31 Cyc. 116. This complaint is founded upon the theory that the machinery was by the terms of the lease to become part of the mill, and therefore realty, and that it was actually so attached as to become realty, in consequence of which plaintiff's damage, considered as a whole, comes about because the mill is rendered less valuable in the sum of $10,000 by reason of plaintiff's trespass. There is no allegation that the machinery was of any particular value. It is incidentally said that it was of great value, which is a mere formal allegation and might mean $5 or $10,000. Such an allegation in an action of trover might be good after verdict, but it is usual in such an action for the complaint to state the reasonable value of the goods converted, and its absence, taken with the other allegations hereinafter noticed, tends to show the theory upon which the complaint is drawn. We have italicized certain allegations of the complaint and reply which further serve to characterize the complaint as an action for trespass *quare clausum fregit.*

Thus it is alleged that the agreement with the tenant was:

"That the said machinery, etc., when so established, should be and become a part of the said realty and a part of said sawmill and the property of the said plaintiff; * * that the same was thereafter by the said company duly installed in the said mill and became a part of the said mill and mill plant and affixed thereto."

It is further alleged therein:

That the defendant did wrongfully and unlawfully "tear down and dismember the said sawmill and took therefrom the machinery, tools, and appliances," etc.

It is also stated:

That by said wrongful action "the said sawmill and sawmill plant of plaintiff was made useless and worthless, and it has been impossible to operate the said sawmill because of the action of the said defendant, and the machinery, tools, implements and appliances which the said defendant left in and about the said mill were useless and practically without value, and that by the wrongful and unlawful action of the said defendant as aforesaid the said plaintiff has been damaged in the sum of $10,000."

Now, if this does not state a plain cause of action for ruining a mill by tearing out machinery which was so attached as to form part of the realty, and thereby rendering the mill useless, it would be difficult to frame a complaint that would state such a cause of action. In what way was plaintiff damaged? The answer is, by defendant rendering its mill useless. How did defendant render the mill useless? The reply follows, by tearing out and removing machinery attached to and part of the realty, so that it could no longer be operated. The complaint here states a much stronger case of trespass *quare clausum fregit* than the case of

*Ellenwood* v. *Marietta Chair Co.,* 158 U. S. 105 (39 L. Ed. 913, 15 Sup. Ct. Rep. 771). As showing the theory upon which the case was tried, it may be observed that plaintiff introduced testimony as to the effect generally upon the mill as such by reason of the taking out of the machinery, and plaintiff's witnesses averred that in removing it defendant cut out some of the frames and some of the timbers, tore up the mill in a general way, and, in fact, nearly destroyed it so far as operating was concerned. It is plain that up to the time the court instructed the jury the case was presented and tried as a case of trespass upon real property. We conclude, therefore, that the case, both upon the pleadings and upon the theory upon which the evidence was introduced, was one for injury to realty, and therefore beyond the jurisdiction of the court to try.

5, 6. It is claimed, however, that the jurisdictional question was waived by the failure to demur to the complaint. Section 72, L. O. L., provides:

"If no objection be taken, either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the court, and the objection that the complaint does not state facts sufficient to constitute a cause of action."

So that, where the complaint shows, as it does here, a case without the jurisdiction of the court to try, that fact may be raised at any time. Under the common law, as shown, the court had no jurisdiction to try a case of this character, and there is no statute granting that jurisdiction. Our Constitution invests the Circuit Courts with general jurisdiction "to be defined, limited, and regulated by law." They are common-law courts, and any extraordinary jurisdiction not in

the course of the common law must come from either
the Constitution or the statutes.  The only statute de-
fining, limiting or regulating their jurisdiction in
actions regarding real estate is Section 42, L. O. L.,
which, among other things, provides that an action for
injuries to real property shall be commenced and tried
where the property is situated.  This section is both a
definition and a limitation of the jurisdiction of the
courts of this state in reference to the trial of this class
of actions; the subject matter, the real property in-
jured, must lie within the boundaries of the county
where the action is commenced, and the fact that the
section quoted makes no provision for the venue of
such cases where the injury occurred in another state,
is in itself a tacit recognition of the common-law rule
heretofore discussed.  In Bliss on Code Pleading, Sec-
tion 406, in discussing the objection "that the court
has no jurisdiction over the subject of the action,"
it is stated that it is a fatal objection, and cannot be
waived by the party, but may be raised at any stage of
the proceedings, and, after giving several instances
where this defect arises, the author says:

"But this want of jurisdiction will more commonly
appear in local as distinguished from transitory
actions."

*Sentenis* v. *Ladew,* 140 N. Y. 463  (35 N. E. 650, 37
Am. St. Rep. 569), is cited by plaintiff as holding a
contrary doctrine.  While there are expressions in the
opinion which indicate the court was of the opinion
that jurisdiction had been waived by the defendant's
having answered to the merits, the question was not
directly involved.  In that case the plaintiffs had
brought an action in New York for trespass to land
situated in Tennessee.  When the case was called for

trial, the plaintiffs failed to appear, and a large sum was assessed against them as costs. They then appeared and moved to set aside the judgment for costs on the ground that the action which they had instituted was local, and that the court had, therefore, no jurisdiction to award costs against them. Among other things the court said:

"We entertain no doubt that the Supreme Court had jurisdiction to render the judgment awarded in this action. Under the Constitution it has general jurisdiction in law and equity, and of the class of actions to which this cause belongs. It is not prohibited by any statute from entertaining jurisdiction of a suit for damages for injuries to real property in another state. As was stated by Judge Earl in *Cragin* v. *Lovell,* 88 N. Y. 258: 'It is a general rule of law that actions for injuries to real property must be brought in the forum *rei sitae,* and this rule of law has been, so far as I can discover, uniformly sanctioned and upheld in this state.' But a party may waive a rule of law or a statute, or even a constitutional provision enacted for his benefit or protection, where it is exclusively a matter of private right, and no considerations of public policy or morals are involved, and having once done so, he cannot subsequently invoke its protection: *Lee* v. *Tillotson,* 24 Wend. 337 [35 Am. Dec. 624]; *Embury* v. *Conner,* 3 N. Y. 511 [53 Am. Dec. 325]; *In re Cooper,* 93 N. Y. 507. If the court acquires jurisdiction of the persons of the parties by due personal service of process, or by their voluntary appearance and submission to its jurisdiction, and the defendant makes no objection to the authority of the court to hear the cause, and the parties proceed to a trial upon the merits, the judgment rendered would be neither void nor voidable for want of jurisdiction, but would be binding and conclusive upon the parties. * * It would be an intolerable abuse of the process of the court if the plaintiff could be permitted to select his tribunal and summon his adversary before it, and,

when defeated in the cause, be heard to say that the action was not cognizable by the court, and that the judgment which it had rendered was a nullity. It might be different if the court was one whose jurisdiction was expressly limited by statute, or there was some statutory inhibition of jurisdiction in a given case or class of cases. Then consent even might not confer jurisdiction."

The court was right in requiring the plaintiff to pay costs, but the result of its opinion, viewed apart from the concrete case there presented, would permit two citizens of Great Britain to litigate in New York concerning the rights of property situated in Germany. This might be vastly convenient just at present, but it is submitted that would be rather a severe tax on the comity of courts. The holding is directly contrary to the view taken by the Supreme Court of the United States in *Sentenis* v. *Ladew,* 140 N. Y. 463 (35 N. E. 650, 37 Am. St. Rep. 569), which case we are disposed to follow.

7. We do not wish to be understood as holding that the plaintiff cannot recover in the courts of this state in an action for the trover and conversion of the machinery removed. We think the better authorities indicate that it can: *Stone* v. *United States,* 167 U. S. 178 (42 L. Ed. 127, 17 Sup. Ct. Rep. 778); *McGonigle* v. *Atchison,* 33 Kan. 726 (7 Pac. 550). What we do decide is that a party cannot bring an action to recover damages for injury to real property and recover for the taking and conversion of personal property.

The action will be dismissed without prejudice.

DISMISSED.   REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE HARRIS concur.