## UNITED STATES–ALASKA PACKING CO. v. LUKETA et al.

### No. 6635.

Circuit Court of Appeals, Ninth Circuit.

May 23, 1932.

J. A. Hellenthal and Hellenthal & Hellenthal, all of Juneau, Alaska, for appellant.

R. E. Robertson, of Juneau, Alaska, and Dykeman, Monheimer & Griffin, of Seattle, Wash., for appellees.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

ST. SURE, District Judge.

Appellees, who are fishermen, joined in a suit against appellant, whose principal business was the operation of herring packing and reduction plants in the territory of Alaska, to foreclose a number of liens. The trial court found that each of the appellees was entitled to judgment for a stated amount, which in each case consisted in part of a bonus claimed due under contracts which will be hereafter particularly noticed. The court concluded that the appellees were entitled to judgment for the amounts due them, and that each was, under the statutes of Alaska, entitled to a lien upon the property of appellant.

Appellant owned and operated two herring plants in Alaska, one at Warm Springs Bay, the other at Port Herbert. Each of the appellees was, on the 19th day of March, 1930, when the contracts were entered into, the owner of a fishing boat.

The contracts are identical in terms. Each, made and entered into in Seattle, state of Washington, is entitled "Herring Purchase Agreement." The contracts contain none of the terms found in charter party agreements, and in each appellees are designated vendors.

Appellant contends that the contracts "are governed by the laws of Washington, not those of Alaska; that if governed by the laws of Alaska, the appellees do not come within the statute; and that the statute would in no event give a lien for the bonus, nor would it give a lien upon both plants for herring delivered to either plant, but would give a lien upon the plant only to which the herring for which the lien is claimed were actually delivered."

Appellant offered proof as to "whether or not had these contracts provided that this fish was to be delivered to plants in the state of Washington, they would have had a lien on those plants in the state of Washington by virtue of the statutes of this state." The trial court refused to receive the proffered evidence, and error is asserted. Because of the view we take of the case, the point becomes immaterial.

In support of its contention relative to the inapplicability of the laws of Alaska, appellant relies on the case of Liverpool, etc., Co. v. Phenix Insurance Co., 129 U. S. 397, 458, 9 S. Ct. 469, 478, 32 L. Ed. 788. The facts of that case are different from those in the instant case, but the decision contains nothing contrary to the general rule, indeed it reiterates it, saying: "The general rule that the nature, the obligation, and the interpretation of a contract are to be governed by the law of the place where it is made, unless the parties at the time of making it have some other law in view, requires a contract * * *, made in one country between citizens or residents thereof, and the performance of which begins there, to be governed by the law of that country, unless the parties, when entering into the contract, clearly manifest a mutual intention that it shall be governed by the law of some other country."

It is axiomatic that "a contract is governed by the laws of the country in which it is entered into, unless it is executed with a view to its performance in another country."

In Andrews v. Pond, 13 Pet. (38 U. S.) 64, 77, 10 L. Ed. 61, the court said: "The general principle in relation to contracts made in one place, to be executed in another, is well settled. They are to be governed by the law of the place of performance."

This case was cited and quoted with approval in The Pehr Ugland (D. C.) 271 F. 340, 343. In Coghlan v. South Carolina Railroad Co., 142 U. S. 101, 109, 12 S. Ct. 150, 152, 35 L. Ed. 951, the court said: "All the terms of the contract must be examined, in connection with the attendant circumstances, to ascertain what law was in the view of the parties when the contract was executed. For, as said by Chief Justice Marshall in Wayman v. Southard, 10 Wheat. 1, 48 [6 L. Ed. 253]; it is a principle, universally recognized, that 'in every forum a contract is governed by the law with a view to which it was made.' And by Lord Mansfield, in Robinson v. Bland, 2 Burrows 1077, 1078: 'The parties had a view to the law of England. The law of the place can never be the rule when the transaction is entered into with an express view to the law of another country as the rule by which it is to be governed.'"

See, also, Hall v. Cordell, 142 U. S. 116, 12 S. Ct. 154, 35 L. Ed. 956; London Assurance Co. v. Companhia De Moagens Do Bar-

reiro, 167 U. S. 149, 160, 17 S. Ct. 785, 42 L. Ed. 113.

As bearing upon this question, appellant calls attention to the fact that certain provisions of the contract provide that the appellees agree to use all available space on their boats for the transportation of freight of the company from Seattle to the plant or plants of the company in Alaska; that appellees agree to deliver all fish caught during the season to one or other of appellant's plants in Alaska; that appellant agrees to pay 75 per cent. of the amount due for fish delivered in Alaska, and the remaining 25 per cent. at Seattle, Wash.; that appellant agrees to pay a bonus of 32 cents per barrel under certain conditions, and this payment is to be made at Seattle, Wash.; that appellant agrees to furnish fuel and lubricating oils required by the boat on the trip from Seattle to Alaska.

On the other hand, it appears that specific reference is made to the laws of Alaska as governing the appellees in performing their part of the contract; that appellant's herring salteries and reduction plants were located in Alaska; that appellees were required to pay licenses and taxes due in Alaska; that appellees were to catch herring in Alaskan waters and deliver the catch to appellant's plants in Alaska.

Paragraph 6 of the contract provides: "The vendor acknowledges receipt of a copy of the laws and regulations governing the fishing of herring in and about the southeastern district in the Territory of Alaska, and promises to observe such laws and regulations and modifications or amendments thereof promulgated by the Secretary of Commerce or other proper authority, and agrees to bear all responsibility for fines or penalties imposed upon him, or his crew for the violation of any law or regulation, and to hold the company harmless therefor."

One of the laws in full force and effect at the date of the execution of the contract, receipt and copy of which is acknowledged in paragraph 6, just quoted, was chapter 53 of the 1923 Session Laws of the Territory of Alaska, under which appellees filed their claims of lien, to enforce which this suit was commenced. The statute is comprehensive, and provides, among other things, that: "Any person, or his assigns, who contributes to the preparation of fish or aquatic animals for food, fish meal, fertilizer, oil or other article of commerce, by furnishing material and labor, or either, therefor, shall have a lien upon the product or output of the cannery,

saltery or other plant or establishment for which such material or labor was furnished, as well as upon such plant or establishment itself including the houses, wharves, machinery and equipment thereunto belonging, for the value of such labor and material, not, however, to exceed the contract price of the remuneration or consideration therefor." (Section 1.)

Section 18 of the act provides that: "The purpose of this Act being remedial to secure laborers, fishermen and others the amount due them for labor performed, or material furnished, in catching fish or aquatic animals, and in preparing the same or the products thereof for market, this Act shall be liberally construed to effect such purpose."

It is further provided in section 19 that the lien authorized "is not subject to waiver before it accrued, and a contract of such waiver is void."

An examination of all the terms of the contract shows that the clear intent of the parties was to carry on the fishing business in Alaska, and to be governed by its statutes.

The contract provides for a bonus, and there is nothing uncertain or ambiguous in its terms in that regard. As suggested by counsel, the appellees here were under no obligation to make any contract with appellant, and the provisions in the contract providing for the payment of a higher price upon conditions named were part of the contract when made, and, no doubt, were a substantial part of the inducement. The court found, and we think properly, that the conditions providing for the payment of full price had been fully complied with by the appellees.

The Alaskan statutes give a lien on all property used in connection with the reduction and packing of fish. The lien thus created is analogous to the ordinary mechanic's lien. It attaches to both the real and personal property for labor and material furnished in the production of fish products.

In the case of Campbell v. Coon, 149 N. Y. 556, 44 N. E. 300, 38 L. R. A. 410, it was held that the right to the benefit of the Mechanic's Lien Law does not depend upon such incidents of the contract of the materialman as relates to its character or the place of payment, but solely upon the fact that the claimant has performed labor upon, or furnished material to, a building within the state; and the fact that a contractor and a subcontractor for a building to be erected in New York were both residents of New Jersey, and that the subcontract was made there, will not de-

prive the subcontractor of a lien for materials which he furnished in compliance with the terms of his contract.

In the case of Eli Bridge Co. v. Lachman, 124 Or. 592, 265 P. 435, 436, the court said:

"While the formal execution of the contract was in Illinois, its performance was in Connecticut. It was in the latter state that the purchaser had the beneficial use and enjoyment of the contract and did those things necessary to accomplish its object.

"The validity of such sales is determined by the situs of the property and not the lex loci contractus. Montesano Lumber Co. v. Portland Iron Works, 78 Or. 53, 152 P. 244; Jones v. North Pacific Fish & Oil Co., 42 Wash. 332, 84 P. 1122, 6 L. R. A. (N. S.) 940, 114 Am. St. Rep. 131; Knowles Loom Works v. Vacher, 57 N. J. Law, 490, 31 A. 306, 33 L. R. A. 305; Beggs v. Bartels, 73 Conn. 132, 46 A. 874, 84 Am. St. Rep. 152; Hervey v. R. I. Locomotive Works, 93 U. S. 664, 23 L. Ed. 1003; 5 R. C. L. 940; 12 C. J. 450. While there are authorities in conflict with the rule announced, the cases cited are unquestionably in keeping with the great weight of authority."

Appellees alleged in paragraph 3 of their complaint: "That during the herring fishing season of 1930, the defendant operated its said herring canneries, plants and establishments, buildings, houses, machinery and equipment, for the preparation, manufacture, processing and canning of herring and other food fish into food products and as articles of commerce; and that said defendant operated said herring canneries, plants and establishments as one manufacturing unit or plant; and that said defendant packed, produced, put out and manufactured therein and thereby a large quantity of herring, but the exact amount thereof is unknown to plaintiffs."

And appellant answered said paragraph as follows: "Defendant admits the allegations contained in paragraph III of the first cause of action set up in the complaint."

The court found, without exception thereto, as follows:

"That during the herring fishing season of 1930, the defendant operated its said herring canneries, plants and establishments, buildings, houses, machinery and equipment, for the preparation, manufacture, processing and canning of herring and other food fish into food products and as articles of commerce; and that said defendant operated said herring canneries, plants and establishments as one manufacturing unit or plant; and that said defendant packed, produced, put out and manufactured therein and thereby a large quantity of herring, fish, fish oil, fertilizer and fish meal, namely, during the year 1930, and prior to November 10, 1930, defendant packed and salted 4,250 pounds of herring and manufactured 47,321 gallons of fish oil and 209.6855 tons of fertilizer and fish meal, at its said plant at Warm Springs Bay, Alaska, and packed and salted 273,225 pounds of herring and manufactured 335,340 gallons of fish oil and 1,281.089 tons of fertilizer and fish meal at its said plant at Port Herbert, Alaska.

"IV.

"That each of the plaintiffs contributed to the preparation of said herring into and for food and as an article of commerce at the defendant's said herring canneries, plants and establishments by furnishing, during the herring fishing season of 1930, and within six calendar months immediately prior to the commencement of this action, to wit: During the period commencing June 1, 1930, and ending October 1, 1930, to the defendant and to its said canneries, plants and establishments, and for the benefit of and at the instance and request of the defendant, and in accordance with the terms of the various written contracts made respectively between said plaintiffs and the defendant, a large quantity of herring, the quantities whereof respectively furnished by said plaintiffs are hereinafter set forth, namely. * * * *"

The trial court found that each of the respective appellees' claims, to the respective amount thereof, as stated in the judgment, "is a first, prior, and paramount lien," upon all of appellant's property, particularly described in the pleadings and within the provisions of the statute.

We find no error in the record, and the judgment is therefore affirmed.