## HALL *v.* CORDELL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF ILLINOIS.

No. 90.   Argued November 12, 1891. — Decided December 7, 1891.

This court is bound by the finding of a jury in an action at law, properly
submitted to them, on conflicting evidence.

A bill of exchange is not negotiated within the meaning of § 537, Rev. Stats.
Missouri ed. 1879, (§ 723, ed. 1889,) while it remains in the ownership or
possession of the payee.

The obligation to perform a verbal agreement, made in Missouri, to accept
and pay, on presentation at the place of business of the promissor in
Illinois, all drafts drawn upon him by the promissee for live stock to be
consigned by the promissee from Missouri to the promissor in Illinois, is
to be determined by the law of Illinois, the place of performance, and
not by the law of Missouri.

THE case was stated by the court as follows:

This was an action of assumpsit. It was based upon an
alleged verbal agreement made on or about April 1, 1886, at
Marshall, Missouri, between the defendants in error, plaintiffs
below, doing business at that place as bankers, under the name
of Cordell & Dunnica, and the plaintiffs in error, doing busi-
ness at the Union Stock Yards, Chicago, Illinois, under the
came of Hall Bros. & Co. There was a verdict and judgment
in favor of the plaintiffs for $5785.79.

The alleged agreement was in substance that Hall Bros. &
Co. would accept and pay, or pay on presentation, all drafts
made upon them by one George Farlow, in favor of Cordell
& Dunnica, for the cost of any live stock bought by Farlow
and shipped by him from Missouri to Hall Bros. & Co. at the
Union Stock Yards at Chicago.

There was proof before the jury tending to show that, on or
about July 13, 1886, Farlow shipped from Missouri nine car
loads of cattle and one car load of hogs, consigned to Hall
Bros. & Co. at the Union Stock Yards, Chicago; that such
cattle and hogs were received by the consignees, and by them

were sold for account of Farlow; that out of the proceeds they retained the amount of the freight on the shipment, the expenses of feeding the stock on the way and at the stock yards, the charges at the yards and of the persons who came to Chicago with the stock, the commissions of the consignees on the sale, the amount Farlow owed them for moneys paid on other drafts over and above the net proceeds of live stock received and sold for him on the market, and two thousand dollars due from Farlow to Hall Bros. & Co. on certain past-due promissory notes given for money loaned to him; that at the time of the above shipment Farlow, at Marshall, Missouri, the place of agreement, made his draft, of date July 13, 1886, upon Hall Bros. & Co., at the Union Stock Yards, Chicago, in favor of Cordell & Dunnica for $11,274, the draft stating that it was for the nine car loads of cattle and one car load of hogs; that this draft was discounted by Cordell & Dunnica, and the proceeds placed to Farlow's credit on their books; that the proceeds were paid out by the plaintiffs on his checks in favor of the parties from whom he purchased the stock mentioned in the draft, and for the expenses incurred in the shipment; that the draft covered only the cost of the stock to Farlow; that upon its presentation to Hall Bros. & Co. they refused to pay it, and the same was protested for nonpayment; and that, subsequently, Cordell & Dunnica received from Hall Bros. & Co. only the sum of $5936.55, the balance of the proceeds of the sale of the above cattle and hogs, consigned to them as stated, after deducting the amounts retained by the consignees, out of such proceeds, on the several accounts above mentioned.

The contract sued upon, having been made in Missouri, the defendant contended that it was invalid under the statutes of that State which are cited in the opinion of the court, *infra*, and could not be made the basis for a recovery in Illinois. This contention being overruled, the defendant excepted, and, (judgment having been given for the plaintiff,) sued out this writ of error.

*Mr. J. A. Sleeper* for plaintiffs in error.

The contract for the breach of which this action was brought, being made in Missouri, is governed by the laws of that State. If those laws, at the time when this verbal agreement was made, required agreements to accept bills of exchange to be in writing, that law governed the Circuit Court in determining whether any contract was made or not, or whether any contract existed. *Bond* v. *Bragg*, 17 Illinois, 69; *Stacy* v. *Baker*, 1 Scammon, 417; *Adams* v. *Robertson*, 37 Illinois, 45; *Evans* v. *Anderson*, 78 Illinois, 558.

The statutes of that State at that time required such a contract to be made in writing, and the verbal promise on which the plaintiffs below relied was consequently a nullity. *Flato* v. *Mulhall*, 4 Mo. App. 476; *Flato* v. *Mulhall*, 72 Missouri, 522; *Rousch* v. *Duff*, 35 Missouri, 312; *Valle* v. *Cerre*, 36 Missouri, 575; *S. C.* 88 Am. Dec. 161; *Ford* v. *Angelrodt*, 37 Missouri, 50; *S. C.* 88 Am. Dec. 174.

*Mr. Ashley M. Gould* for defendants in error. *Mr. Frank P. Sebree* and *Mr. Henry C. McDougal* were with him on the brief.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

There was evidence on behalf of the defendants tending to show that no such agreement was made as that alleged. But the issues of fact were fairly submitted to the jury, and we must assume, on this writ of error, that the jury found from the evidence that the alleged agreement was made between the parties.

Our examination must be restricted to the questions of law involved in the rulings of the court below. And the only one which, in our judgment, it is necessary to notice is that arising upon the instructions asked by the defendant, and which the court refused to give, to the effect that the agreement in question, having been made in Missouri, and not having been reduced to writing, was invalid under the statutes of that State, and could not be recognized in Illinois as the basis of an action there against the defendants.

The statute of Missouri referred to is as follows: "§ 533. No person within this State shall be charged as an acceptor of a bill of exchange, unless his acceptance shall be in writing, signed by himself or his lawful agent.   § 534. If such acceptance be written on a paper other than the bill, it shall not bind the acceptor, except in favor of a person to whom such acceptance shall have been shown, and who, upon the faith thereof, shall have received the bill for a valuable consideration.   § 535. An unconditional promise, in writing, to accept a bill before it is drawn, shall be deemed an actual acceptance in favor of every person to whom such written promise shall have been shown, and who, upon the faith thereof, shall have received the bill for a valuable consideration.   § 536. Every holder of a bill presenting the same for acceptance may require that the acceptance be written on the bill, and a refusal to comply with such request shall be deemed a refusal to accept, and the bill may be protested for non-acceptance.   § 537. The preceding sections shall not be construed to impair the right of any person to whom a promise to accept a bill may have been made, and who, on the faith of such promise, shall have drawn or negotiated the bill, to recover damages of the party making such promise, on his refusal to accept such bill." 1 Rev. Stats. Missouri, ed. 1879, p. 84; ed. 1889, p. 253, §§ 719, 723; Wagner's Stats. Missouri, 1872, p. 214, §§ 1 to 5.

The contention of the plaintiffs in error is that the rights of the parties are to be determined by the law of the place where the alleged agreement was made. If this be so, it may be that the judgment could not be sustained; for the statute of Missouri expressly declares that no person, within that State, shall be charged as an acceptor of a bill of exchange, unless his acceptance be in writing. And the statute, as construed by the highest court of Missouri, equally embraces, within its inhibitions, an action upon a parol promise to accept a bill, except as provided in section 537. *Flato* v. *Mulhall*, 72 Missouri, 522, 526; *Rousch* v. *Duff*, 35 Missouri, 312, 314. But, if the law of Missouri governs, this action could not be maintained under that section; because, as held in *Flato* v. *Mulhall*, above cited, the plaintiffs, being the payees in the bill

drawn by Farlow upon Hall Bros. & Co., could not, within the meaning of the statute, be said to have "negotiated" it. The Missouri statute is a copy of a New York statute, in respect to which, Judge Duer, in *Blakeston* v. *Dudley*, 5 Duer, 373, 377, said: "We think, that to negotiate a bill can only mean to transfer it for value, and that it is a solecism to say that a bill has been negotiated by a payee, who has never parted with its ownership or possession. The fact that the plaintiffs had given value for the bill when they received it, only proves its negotiation by the drawer — its negotiation to, and not by them. . . : Their putting their names upon the back of the bill, was not an endorsement, but a mere authority to the agent whom they employed, to demand its acceptance and payment. The manifest intention of the legislature in § 10 [similar to § 537 of the Missouri statutes] was to create an exception in favor of those who, having transferred a bill for value, on the faith of the promise of the drawee to accept it, have, in consequence of his refusal to accept, been rendered liable and been subjected to damages, as drawers or indorsers." The plaintiffs in error, therefore, cannot rest their case upon section 537.

We are, however, of opinion that, upon principle and authority, the rights of the parties are not to be determined by the law of Missouri. The statute of that State can have no application to an action brought to charge a person, in Illinois, upon a parol promise, to accept and pay a bill of exchange payable in Illinois. The agreement to accept and pay, or to pay upon presentation, was to be entirely performed in Illinois, which was the State of the residence and place of business of the defendants. They were not bound to accept or pay elsewhere than at the place to which, by the terms of the agreement, the stock was to be shipped. Nothing in the case shows that the parties had in view, in respect to the execution of the contract, any other law than the law of the place of performance. That law, consequently, must determine the rights of the parties. *Coghlan* v. *South Carolina Railroad Co.*, ante, 101, and the authorities there cited. In this connection it is well to state that in *New York & Virginia State Stock Bank* v.

*Gibson,* 5 Duer, 574, 583, a case arising under the statute of New York above referred to, the court said : " Those provisions manifestly embrace all bills, wherever drawn, that are to be accepted and paid within this State, and were the terms of the statute less explicit than they are, the general rule of law would lead us to the same conclusion : that the validity of a promise to accept a bill of exchange depends upon the law of the place where the bill is to be accepted and paid," citing *Boyce* v. *Edwards,* 4 Pet. 111.

Looking, then, at the law of Illinois, there is no difficulty in holding that the defendants were liable for a breach of their parol agreement, made in Missouri, to accept and pay, or to pay upon presentation, in Illinois, the bills drawn by Farlow, pursuant to that agreement, in favor of the plaintiffs. It was held in *Scudder* v. *Union National Bank,* 91 U. S. 406, 413, that, in Illinois, a parol acceptance of, or a parol promise to accept, upon a sufficient consideration, a bill of exchange, was binding on the acceptor. *Mason* v. *Donsay,* 35 Illinois, 424, 433 ; *Nelson* v. *First Nat. Bank of Chicago,* 48 Illinois, 36, 40 ; *Sturges* v. *Fourth National Bank of Chicago,* 75 Illinois, 595 ; *St. Louis National Stock Yards* v. *O'Reilly,* 85 Illinois, 546, 551.

The views we have expressed were substantially those upon which the court below proceeded in its refusal of the defendants' requests for instructions, as well as in its charge to the jury. The suggestion that there was a material variance between the averments of the original and amended declaration, and the proof adduced by the plaintiffs, is without foundation. The real issue was fairly submitted to the jury, and their verdict must stand.

*Judgment affirmed.*

MR. JUSTICE GRAY was not present at the argument and did not participate in the decision.