## Tom V. Bowman *v.* C. P. Price.

### (*Knoxville.* September Term, 1920.)

1. **USURY.** Law governing fixed by good faith intent of parties.

As respects the claim of usury, neither the place of execution nor of performance conclusively fixes the law governing a note, but this is to be determined from the parties' intention gathered from the instrument in connection with the circumstances surrounding the transaction, but such intent must have been entertained in good faith, and not to evade any usury law, and the presumption is against an unlawful intent. (*Post, pp.* 380-383.)

Cases cited and approved: Hubble v. Land Co., 95 Tenn., 585; Coghlan v. Railroad Co., 142 U. S., 101; Bank v. Mann, 94 Tenn., Tenn., 17; Trabue v. Short, 45 Tenn., 293; Senter v. Bowman, 52 Tenn., 14; Bolton v. Street, 43 Tenn., 31; Overton v. Bolton, 56 Tenn., 762;

Case cited and distinguished: Hall v. Cordell, 142 U. S., 116.

2. **USURY.** Law of Alabama as to rate of interest held to apply.

Where a transaction in which notes were given bearing eight per cent. interest took place in Alabama, where such rate was lawful, and the payee resided in West Virginia, and the maker in Tennessee, where they were made payable at a bank with which the maker transacted business for his convenience, *held* that the law of Alabama applied, and the notes were not usurious because interest rate was higher than allowed by Tennessee law, and the notes were enforceable in Tennessee. (*Post, pp.* 383, 384.)

FROM KNOX.

Appeal from the Chancery Court of Knox County.—
HON. CHAS. HAYS BROWN, Chancellor.

DONALDSON & MONTGOMERY, for Tom V. Bowman.

A. T. BOWEN, for C. P. Price.

MR. L. D. SMITH, Special Judge, delivered the opinion
of the Court.

The only question presented in this case is whether the
notes sued on are tainted with usury and therefore non-
enforceable.

The facts upon which this question is to be determined
are undisputed, and are as set forth in the original bill,
the case having come to this court upon the discretionary
appeal allowed by the chancellor from his decree over-
ruling the demurrer of the defendant which raised the
question.

The facts are:

"The defendant is justly indebted to the complainant
on four promissory notes each for $500 dated September
9, 1915, and each bearing interest from date at the rate of
eight per cent. per annum. Said notes were executed and
dated and delivered in Gurley, Ala., in which State said
rate of interest is legal and was the legal rate of interest
in said State at the time of the execution and delivery of

said notes, and said notes were made payable at the City
National Bank of Knoxville, Tenn. Said notes were for
services performed in Alabama and were not intended by
either party to evade the usury laws of Tennessee, or any
other State; and at the time of their execution and de-
livery the complainant resided in West Virginia and the
defendant in Knoxville, Tenn., and did business at the City
National Bank of said city."

The language of each of the four notes sued on is the
same except as to the date of maturity. One of the notes
reads as follows:

"Gurley, Ala., Sept. 9, 1915.

"Sixty days after date without grace for value received
I promise to pay to Tom B. Bowman or order ($500) five
hundred dollars with 8 per cent. interest from date at the
City National Bank of Knoxville, Tenn. In case this note
is not paid by me at maturity, I agree to pay all costs of
collection, including a reasonable attorney's fee. As
against the payment of this note, I hereby waive all rights
to exemption under the laws of Alabama, or of any other
State, or of the United States. As a collateral security for
this or any other debt I now or hereafter may owe said
payee, I hereby pledge the following collateral, with pow-
er to sell, the same, publicly or privately, with or without
advertisement, if the indebtedness secured hereby is not
paid at maturity, viz.:

"C. P. PRICE.

"Address, Knoxville, Tennessee."

The contention of the defendant is that these notes con-
stitute a Tennessee contract, and, as they provide upon

their face for a rate of interest in excess of that allowed by the laws of the State, their collection cannot be enforced. The complainant contends that the notes constitute an Alabama contract, in which State eight per cent. is a legal rate of interest. If the notes constitute a Tennessee contract, undoubtedly they cannot be collected; whereas, if they constitute an Alabama contract, they can be collected. The question therefore resolves itself to this: Do the notes, under the facts stated, constitute a Tennessee contract?

Unquestionably the notes were executed and delivered to the payee in the State of Alabama while both parties were in that State; the consideration therefor passed in Alabama; the contract represented in the notes was made in good faith by both parties in Alabama, and with no intention of evading the usury laws of Tennessee. The complainant, who was the payee of the notes, was a citizen of West Virginia, while the defendant, the maker of the notes, was a citizen of Tennessee. The notes were made payable at a bank in Knoxville, Tenn., at which the defendant did business.

The defendant concedes in his brief that the general rule is that, where there is nothing in the contract to show the place of performance, it will be treated as having been made agreeably to the laws of the State where it was executed, but he insists that, when the place of performance is specified in the contract, it is conclusively presumed to have been executed with reference to the laws of that State, and its validity must be determined thereby. He relies

upon the case of *Hubble* v. *Land Co.*, decided by this court, and reported in 95 Tenn., 585, 32 S. W., 965, to sustain this contention.

The facts of the Hubble Case are:

In October, 1888, one Churchill, who was the secretary and treasurer of the Morristown Land & Improvement Company, a Tennessee corporation, negotiated a loan of $2,500 for said land company from Mrs. Geo. W. Hubble, who was at that time temporarily sojourning in the State of Connecticut. The permanent abode and place of business of Mrs. Hubble was in the State of New Jersey. The secretary and the president of the land company were residents of the State of North Carolina. It was agreed in the negotiations that the land company would execute a mortgage on certain lands in Tennessee to secure the loan. The money was to be paid upon the arrival of the proper papers at Newark, N. J. After the negotiations were concluded, Mr. Churchill returned to his home in North Carolina, where he and the president of the land company resided, and there the note and deed of trust for the security of the loan were executed, and then forwarded to Mrs. Hubble in New Jersey. The note bore upon its face no place of date, but was made payable at the National Bank of Newark, N. J., and carried seven per cent. interest upon its face. Thus it will be seen the maker of the note was a Tennessee corporation; the officers of the corporation who negotiated the loan lived in North Carolina; the negotiations were carried on in the State of Connecticut, where the payee was only temporarily residing; the

note was made payable at the place of business and permanent residence of the payee, in New Jersey; and it was drawn up in North Carolina and delivered in New Jersey. The court in its opinion made this observation:

"It will be observed, however, that the note and mortgage were delivered and the contract consummated in the State of New Jersey, where Mrs. Hubble was domiciled."

Upon this state of facts the court held that the note was a New Jersey contract. After quoting from text-books on the subject, the court said:

"As already observed, this note is payable on its face in the State of New Jersey, and the court of chancery appeals does not find that, by any understanding between the parties, the execution and performance of the contract were to be governed by any other law than the law of the place of payment as fixed by the note. It follows that the validity of this contract must be determined by the law governing such contracts prevailing in the State of New Jersey."

The court in the Hubble Case did not undertake to state in terms any rule or decision by which its conclusions were reached, but it is quite clear that the controlling facts were that the transaction was finally consummated by the delivery of the note in New Jersey, in which State the payee was domiciled, and the note was to be paid, and in the absence of any understanding between the parties that the execution and performance of the contract were to be governed by the law of any other State.

That case differs from the one under consideration in

that the place of performance was identical with the place of delivery and the consummation of the contract; whereas in this case the place of execution, consummation, and delivery of the contract was in one State, and the place of payment was in another. The controlling facts of that case brought it clearly within the rule quoted by that court from Mr. Tiedeman to the effect that:

"It is not the law of the place where the contract is signed or executed, but the law of the place where the contract is consummated by delivery or otherwise, which governs the construction of the contract. If the contract is made in one place, and it is agreed to be performed in another place, the law of place of performance instead of the law *loci contractus* will govern the contract."

The conclusion of the court also accords with the rule which it quoted from Rorer on Interstate Law, in these words:

"Notes drawn in one State and delivered and payable in another for purchases made there are governed by the law of the latter State, and are considered there made, for by delivery only the act of making is fully consummated."

The court evidently had in mind in reaching its conclusion in the case what was quoted from *Coghlan* v. *Railroad Co.*, 142 U. S., 101, 12 Sup. Ct., 150, 35 L. Ed., 951:

"It is a principle universally recognized that 'in every forum a contract is governed by the law with a view to which it was made.' "

And from the case of *Hall* v. *Cordell*, 142 U. S., 116, 12 Sup. Ct., 154, 35 L. Ed., 956:

"But where there is nothing to show that the parties had in view, in respect to the execution of the contract, any other law that the law of the place of performance, that . . . law must determine the rights of the parties."

From the foregoing analysis of the Hubble Case, upon which the defendant relies, it will be seen that it is not directly in point and is entirely consistent with the contention made by the complainant. The only similarity which that case has to the complainant's contention is that the law of the State where the note was payable was applied. But it is dissimilar in that the contract was made and executed, signed, delivered, and consummated in a State different to that where it was made payable.

We must therefore resort to principle or to other cases to find the rule applicable to this case.

In Bank v. Mann, 94 Tenn., 17, 27 S. W., 1015, the note sued on showed that it was executed in Tennessee, and that it was payable in Tennessee, but it was held to be a North Carolina contract under the proof which showed that it was given as part of the consideration for a stock of furniture located in North Carolina, in which the payee and the maker of the note were jointly interested, and by which it was made to appear that the proposition of sale was submitted to the maker of the note in Knoxville, Tenn., accepted there by him, and the acceptance wired to the payee in North Carolina, and that after the invoice of the goods was taken at Asheville, N. C., the note was executed and delivered at that place, the parties using a blank note

which they had customarily used in their joint business at Knoxville, Tenn. Upon that state of facts this court, in announcing its conclusion, said:

"We are of opinion, from the record, that the contract is a North Carolina contract, and was so intended, and the fact that the note is dated Knoxville, and payable in Knoxville, arises simply from an accidental use of a blank note with these words in it, and not from a design to make it a Tennessee contract, or that it should be governed by Tennessee law."

While no rule is stated in this case in terms, it does appear that the real intention of the parties was controlling, and that this intention could be ascertained outside the language of the contract. Clearly the case does not sustain the defendant's contention as expressed in his brief that:

"The place of performance designated in the instrument itself fixes conclusively the law by which the validity of the instrument is governed."

The case of *Trabue* v. *Short,* 5 Cold., 293, is cited in support of defendant's contention. In that case the note was made, executed, and delivered in the State of Kentucky, all the parties thereto being citizens of that State. It was indorsed by the payees and delivered to plaintiffs, and it was made payable at the office of the payees in New Orleans, La. The question in that case was between the holders of the note and the indorsers. The court, in determining what State law controlled as between the holders and indorsers, said in passing: "The law of Louisiana, without doubt, governs the contract of the makers."

But it held that the same law did not necessarily control in the case of the indorsers, and that the fact that the note was payable in Louisiana was not sufficient to make it a Louisiana contract, since the indorsement was made without any view of performance under the laws of Louisiana, and therefore the contract must be governed both upon principle and authority by the laws of Kentucky, where it was made. The case did not have under consideration the situation of the makers of the note, and it cannot be said that it is held therein that the mere fact that the note was payable in Louisiana by the makers governed the law of the contract; but, as the indorsement was made without reference to the place of performance, the laws of the place of the execution of the contract would govern as to the indorsers.

Both the complainant and the defendant in their briefs rely upon *Senter* v. *Bowman,* 5 Heisk., 14. In that case the note was dated in St. Louis, Mo., and it was shown that it was given for money advanced on cotton to be shipped to the payee of the note. The note bore ten per cent. interest, a lawful rate in Missouri, but unlawful in Tennessee. The trial judge instructed the jury in effect that the note would be usurious unless it showed upon its face that it was payable in St. Louis. This was held to be erroneous. The proof showed that, although the note was dated at St. Louis, and therefore presumably payable in St. Louis, yet in fact it was written, executed, and delivered in Tennessee. The court, assuming it was competent for the parties to contract for the rate of interest where the contract was to be performed, proceeded to inquire

whether the parties in this case made their contract to be performed in Missouri, and said:

"This is a question of intention, to be deduced from the language employed in the contract; and, in ascertaining the intention, we may look to the situation of the parties, the motives which induced the agreement, and the purposes and the object designed to be effected by it."

The court found that Senter & Co., payees of the note, were cotton merchants in St. Louis, Mo., while Bowman, the maker of the note, was a farmer in Tennessee. The merchant wanted the farmer's cotton shipped to it, and the farmer wanted to ship to the merchant his cotton. The farmer, not being ready to ship, wanted an advance made on the shipment. The merchant, in order to get the cotton, advanced the farmer $300, for which the note was executed. Although the contract was made in Tennessee, when it was reduced to writing it was dated in Missouri. The court said:

"Clearly it was made thus either to indicate that it was made . . . with the view of evading the usury laws of Tennessee, or that it was . . . to be performed in . . . Missouri. It is a sound rule of construction, that when a contract will bear two interpretations, one effecting a legal, and the other an illegal, object, we are rather to adopt the interpretation consistent with a legal than with an illegal one."

Other cases cited from Tennessee in the briefs shed no particular light upon the question at issue, except the case of *Bolton* v. *Street*, 3 Cold., 31.

That case is believed to be directly in point against the contention of the defendant and in favor of that of the complainant. The note in that case was dated at a point in Mississippi, and was payable at a bank in Memphis, and bore ten per cent. interest, a legal rate in Mississippi, and usurious in Tennessee. The note sued on in that case was in the following words:

"$4,716.64.                 Holly Springs, Miss.,

"August 18, 1859.

"On the first day of January, eighteen hundred and sixty-one (1861), I promise to pay to the order, J. C. Dougherty, four thousand seven hundred and sixteen 64/100 dollars, at the Bank of Memphis, at Memphis, Tenn., for value received, with ten per cent. interest, from the first day of March next.

"Witness my hand and seal.

"[Signed]    A. STREET & Co."

The facts of this case not stated in the opinion published in 3 Cold., may be found where they are again stated somewhat more fully in the case when it was before the supreme court at a later term, reported in *Overton* v. *Bolton,* 9 Heisk., 762, 24 Am. Rep., 367.

The note was given for a crop of cotton raised by one Alexander in Mississippi, in which State the payee also lived.

It was contended by the maker of the note when sued that, as by the terms of the note it was payable in Tennessee, it must be construed according to the laws of Tennessee, and, since it bore an illegal rate of interest, it could not be collected. The court reviewed at considerable

length, and apparently after much research, the authorities upon the subject, and reached the conclusion that the law was not to be determined merely from the place where the note was to be paid, but that the general rule to that effect must be understood to be applicable alone to contracts in which the parties have failed to make any stipulation as to the rate of interest. The court said:

"In such cases it is presumed the parties contracted with a view to the rate of interest allowed by the law of the place of payment. It is upon this presumption the general rule is based; but where the parties, by the very terms of the contract, stipulate for a higher or lower rate of interest than is allowed by the law of the place where the payment is to be made, the presumption that the contract was made with a view to the law of that place cannot arise, and therefore does not apply. Six per cent. is the lawful rate of interest in Tennessee. Suppose the parties to this suit had stipulated for the payment of five per cent. instead of ten; then could it have been said that the parties had contracted with a view to the laws of Tennessee, by which the rate of interest is estimated at six per cent., and, notwithstanding the stipulations in the contract for the reservation of but five per cent., the plaintiffs would have been entitled to recover six per cent.? Certainly not, because the stipulations for the payment of interest at the rate of five per cent. is of itself a substantive part of the contract, and rebuts the presumption which would arise in the absence of any contract upon the subject; and the party would recover upon the contract and according to its terms, instead of six per cent. allowed by

law. Then the parties may stipulate in the contract for a different rate of interest from the rate allowed by the law of the place of payment; and, when they do so stipulate, no presumption can arise that they entered into the transaction with a view to the law of the place of payment. The principle is the same whether the stipulated rate be higher or lower than the rate allowed by the law of the place of performance, so it does not exceed the rate allowed by the law of the place where the contract is made."

The court concluded its discussion of the case with the following language:

"After a careful examination of all the authorities to which we have had access, we hold that, if a contract expressly provides for its performance in a place other than that where it is made, the parties may, in good faith, stipulate for the payment of interest according to the law of either place; and in such case the contract will not be tainted with usury. But, if the making of the contract in one place where a higher rate of interest is allowed, to be performed in another, where the rate of interest allowed is lower, was a mere device to evade the usury laws of the place of performance, and such contract contain a stipulation for the payment of a higher rate, it will be usurious.

"These reasons appear to us not only in accordance with reason and sound policy, but to be well sustained by both principle and authority."

The Tennessee cases and very many well-considered cases from other jurisdictions are fully in accord with the

conclusions of the court in the case just referred to, as well as the rule stated therein.

The rule deducible from the Tennessee cases and the one deemed more in accord with principle is that neither the place of the execution nor the place of performance conclusively fixes the law governing a contract, but this is to be determined from the intention of the parties gathered from the instrument itself, taken in connection with all the circumstances surrounding the transaction. Of course, this intent, when ascertained, must have been entertained in good faith, and not for the purpose of evading the usury law, and, before the contract can be determined to be controlled by the law of any particular State, the intent must be reasonably referable to a place where some important element of the contract has its *situs*. In arriving at this intent the presumption is against the intent to violate the law, especially where several of the elements of the contract have their *situs* in that State where the contract is a valid one. These rules are fully sustained by a discussion of the subject in 39 Cyc., pp. 891 to 903, from which we quote the following:

"When the several transactions connected with the loaning of money have taken place in two or more States, the problem of determining what law shall govern in deciding whether the contract is usurious or not is largely one of ascertaining what law the parties had in mind as fixing their rights under the contract. The intent of the parties is therefore usually the cardinal factor in the vexatious problems involving conflict of usury laws, and the

effort of the courts is to discover this intent which may be specifically expressed by the parties, or left to inference from all the circumstances of the case. But this rule that the intent of the parties designates the governing law is subject to these provisos: (1) The intent must be entertained in good faith, and not for the purpose of evading the usury laws of another State; (2) it must be reasonable and referable to a place where some important element of the contract has its *situs;* and (3) it must not be contrary to the public policy of the forum, or to the rule that foreign penalties and remedies will not be enforced." Pages 891, 892.

"It is frequently stated that, when a note or other obligation is made in one State and payable in another, it is presumed, in the absence of a contrary agreement, express or implied, to be governed by the usury laws of the latter State. Such a rule, however, is of little practical value, since the parties are deemed to contract with reference to that law, whether of the place of contract or of the place of performance, by which the contract may be held valid. And if the contract is usurious by the law of both the place of contract and of the place of performance, the former is always applied." Page 897.

"When the parties to a contract of loan expressly stipulate that it shall be governed by the law of a particular State, this stipulation will be given effect, provided some element of the loan transaction is properly referable to that State. But when bad faith is shown and it is apparent that the stipulation that the law of another State shall govern is placed in the contract merely for the purpose of

evading the usury laws of the forum which would other-
wise be applicable, the stipulation will be ignored, and
the law of the forum applied." Pages 897 and 898.

"When the intention of the parties as to the governing
law is not specifically expressed in the contract, it may
be inferred from all the terms of the contract taken in
connection with all the circumstances surrounding the
transactions. In the effort to arrive at the presumed in-
tention of the parties as to the law governing loan trans-
actions, the courts have developed certain general rules
which are stated below. But it must be borne in mind
that the circumstances of differing cases vary indefinitely,
and any particular variation of fact may render inappli-
cable a general rule that would otherwise be expected to
apply.

"When all of the important elements of a loan trans-
action have their *situs* in the same State—that is, when
the contract is made, the consideration is given, and pay-
ment is to be made all in the same place—it is evident that
such State must give the law to the transaction wherever
suit may be brought, even though the result of applying
such law will be to render the obligation usurious as
against the law of the creditor's residence. In such cases,
however, as shown above, the courts usually declare that
the *lex loci contractus* governs.

"*In general.*—Every presumption is against an intention
to violate the law. Therefore, where the several elements
of a contract have their *situs* in different States, if by the
laws of one of the States the contract would be legal, but
illegal by the laws of the others, then the parties will be

presumed to have contracted with reference to the law of the place wherein the transaction would be valid rather than in view of the law by which the transaction is illegal, always providing there is no evidence of bad faith, or of any intention to evade the usury laws of the latter State. And when, under the rule just stated, another law than that of the forum may govern the contract, in the absence of proof of the contrary it will be presumed to be valid under the foreign law despite the fact that it would be usurious by the law of the forum."

Pages 898, 899, 900.

Applying these principles to the instant case, we have both parties in Alabama, when and where the contract was made, executed, and delivered. They had the transactions which resulted in the execution of the notes in the State of Alabama. Both parties may well be presumed to know what the lawful rate of interest in that State was. Certainly the defendant knew that eight per cent. was unlawful in Tennessee, as he was a business man and a citizen of Tennessee. Surely he did not intend by stipulating eight per cent. to provide means of escaping payment of an honest debt. The note was made payable in Knoxville evidently for his accommodation, as it was made payable at a bank where he did business. There is no evidence whatever of bad faith, but, upon the contrary, the bill avers, and its averments are taken as true on this hearing, that the contract was made in good faith, and with no intention of evading the usury laws of Tennessee or of any other State. The contract in question cannot be referred to Tennessee law without imputing bad faith to

the defendant and an intention upon his part and of the complainant to evade the usury law.

Since this contract was executed and delivered in Alabama, for a consideration passing in Alabama, and the only element which tends to make it a Tennessee contract is the fact that it was payable in Tennessee, and applying the rule just stated, we must conclude that the parties intended the contract to be an Alabama contract, and, being valid under the laws of Alabama, it is enforceable in this State.

The chancellor was eminently correct in overruling the demurrer, and his decree will be in all things affirmed, and the case remanded to the chancery court of Knox county for further proceedings.