## MOUNTAIN LUMBER CO. et al. v. DAVIS, Director General of Railroads, et al. *

(District Court, S. D. New York. March 17, 1925.)

**1. Contracts ⬸276—Law of place of performance controls manner of performance and discharge of obligation.**

Law of place of performance controls manner of performance and discharge of obligations under contract.

**2. Payment ⬸2—Payment should be in currency of country where payment is to be made.**

Where indebtedness is payable in particular country, and character of money is not specified, it should be in currency of country where payment is to be made, though contract was made in different country.

**3. Payment ⬸2—Transportation charges for through shipments from Canada to New York held payable in lawful money of United States.**

Transportation charges for through shipment from Canada to New York, payable in New York, were payable in lawful money of United States for entire trip, notwithstanding depreciated value of Canadian currency and Interstate Commerce Act, § 6, subd. 7 (Comp. St. § 8569).

**4. Principal and agent ⬸136(4)—Agent cannot be compelled to pay back money paid over to principal in good faith.**

An agent, known and treated as such, cannot be compelled to pay back money which he has paid over to his principal in good faith.

In equity. Action by Mountain Lumber Company and others against James C. Davis, Director General of Railroads and Agent of the United States, and another. On motion to dismiss bill of complaint. Bill dismissed on the merits.

George E. Nelson, of New York City, and Arthur B. Hayes, of Washington, D. C., for plaintiffs.

*Decree affirmed 11 F.(2d) ——.

Walter C. Noyes and George H. Richards, both of New York City, for defendants.

BONDY, District Judge. This is a motion to dismiss the bill of complaint. The bill alleges that each of the plaintiffs shipped large quantities of wood pulp by railroad from various points in Canada over the international boundary to various points in the United States, on through bills of lading and on through rates of transportation set forth in tariffs issued by the carriers and filed with the Board of Railway Commissioners for Canada and with the Interstate Commerce Commission of the United States; that the through rates published in the Canadian tariffs cover the entire charges for the transportation from points in Canada to Willsboro, Corinth, and Ticonderago, in the state of New York, where the Canadian carriers connected with the carriers in the United States; that for this entire transportation service the plaintiffs paid to the defendants all the freight charges accruing to all the participating carriers; that under section 6, subdivision 7, of the Interstate Commerce Act (Comp. St. § 8569), no carrier is permitted to charge or demand or collect or receive a greater or less or different compensation for the transportation of property than the compensation which is based upon the tariffs containing the rates and charges filed and in effect at the time the transportation took place; that the defendants did demand, receive, and collect for the transportation of the wood pulp the freight charges for the entire transportation in money of the United States; that it was the duty of the defendants as delivering carriers to collect from plaintiffs the full amount of the freight charges due for the said transportation from the points of origin in Canada to Willsboro, Corinth and Ticonderago, in the state of New York; that the money of the Dominion of Canada had a depreciated value as compared with the money of the United States; that for transportation service in Canada to the said border points in the United States by the Canadian railroad carriers the Canadian carriers could only demand, receive, and collect the published tariff charges in Canadian money, and that when plaintiffs paid to the defendants the entire transportation charges from the points of origin to Willsboro, Corinth, and Ticonderago, in the state of New York, in money of the United States, plaintiff paid more than the published tariff charges; that when the defendants demanded and received and collected the charges for the entire transportation in money of the United States, they collected more than the published tariff rates and overcharged for the transportation service in an amount representing the difference in the rate of exchange between money of the Dominion of Canada and money of the United States, calculated upon the total tonnage of the pulp wood so shipped, and collected for services rendered by the Canadian carriers, an overcharge recognized as such in rulings and orders issued by the Board of Railway Commissioners of Canada; that the freight charges so paid became a part of a general transportation fund of the said defendants, from which settlements were made at stated periods by said defendants with all participating carriers, including the carriers operating and performing transportation service in Canada; that the said defendants have overcharged for the shipments of said pulp wood and have collected from plaintiffs certain sums of money to which the said defendants are not justly or lawfully entitled, and that said defendants are indebted to plaintiffs for said overcharges in freight in an amount represented by the difference between the freight charges accruing to the carriers performing the transportation service in the Dominion of Canada, based upon payment in money of the United States and on money of the Dominion of Canada, calculated upon the total tonnage of said pulp wood transported.

The Interstate Commerce Act provides that no carrier, unless otherwise provided by that act, shall engage or participate in transportation of passengers or property unless the rates, fares, and charges upon which the same are transported by the carrier have been filed and published, and, as the bill itself alleges, that no carrier is permitted to charge or demand or collect or receive a greater or less or different compensation for the transportation of property than the compensation which is named in and based upon the tariffs containing the rates, fares, and charges filed and in effect at the time the transportation took place.

That act unquestionably required the rates, fares, and charges to be stated in money of the United States. The company, therefore, did nothing but what it was compelled to do under the law when it collected the tariff rate in money of the United States. See New York & Pennsylvania Co., Arm-

strong Forrest Company, Inc., and West Virginia Pulp & Paper Company v. James C. Davis, Director General of Railroads, 2 F.(2d) 858, decided in the District Court for the Eastern District of Pennsylvania, December, 1924.

[1] Had Congress intended that transportation charges should be affected by differences in the exchange value of American and Canadian money, it is reasonable to assume that it would have expressly so provided, and that it would have indicated the manner in which the constantly fluctuating values should be determined, especially in view of the fact that the act provides that no carrier by railroad shall deliver or relinquish possession at destination of any freight transported by it until all tariff rates and charges thereon have been paid. The law of the place where a contract is to be performed is controlling upon the question as to the manner of the performance and of the discharge of the obligations incurred under the contract. Pritchard v. Norton, 106 U. S. 124, 1 S. Ct. 102, 27 L. Ed. 104; Scudder v. Union National Bank, 91 U. S. 406, 23 L. Ed. 245; Hall v. Cordell, 142 U. S. 116, 12 S. Ct. 154, 35 L. Ed. 956; Coghlan v. South Carolina R. Co., 142 U. S. 101, 12 S. Ct. 150, 35 L. Ed. 951.

[2] Where indebtedness is payable in a particular country and the character of the money in which payment is to be made is not specified, the money used should be the currency of the country where the payment is to be made, though the contract is entered into in a different country. 22 American and English Encycl. of Laws (2d Ed.) p. 542. In a currency which has the same name, but is of different value in different countries, the currency of the country where it is payable is presumed to be intended by the parties. Story on Conflict of Laws (8th Ed.) § 272, p. 368.

[3] The transportation charges were payable in New York, and the tariff fixed the charges of the transportation to New York in money of the United States. It therefore must be assumed to have been the intention of the plaintiffs to pay the specified rate in lawful money of the United States. In Abrasive Co. v. Director General, 69 Interst. Com. Com'n R. 630, the Interstate Commerce Commission held that payment for the part of the transportation taking place in the United States can only be paid in the currency thereof. In the matter of Payment of Charges in United States Currency, 59 Interst. Com. Com'n R. 263, the Interstate Commerce Commission approved the rule whereby the carrier performing that part of the transportation which took place wholly within this country proposed to demand prepayment in currency of the United States on shipments of property from points in the United States to points in Canada.

In Koine v. Michigan Central Railroad Co., 83 Interst. Com. Com'n R. 407, the Interstate Commerce Commission dismissed a complaint alleging unjust discrimination by the refusal of the defendant at Buffalo, N. Y., to accept Canadian currency at par in payment for two round trip tickets from there to Huntsville, Ontario, Canada, and held that the tariffs, when filed with the Commission, mean only the lawful money of the United States, and that under the law that amount, plus the war tax, was the only sum the defendant could collect.

[4] It appears that payments of the through rates were made by the plaintiffs without any protest, and that the defendants have settled with the Canadian and other participating carriers for their respective portions of the transportation charge. It is a general rule of law that an agent, known and treated as such, cannot be compelled to pay back money which he has paid over to his principal in good faith. United States v. Pinover (D. C.) 3 F. 305.

The dismissal of the bill on the grounds stated makes it unnecessary to consider the objections that the application should have been made to the Interstate Commerce Commission before suit was brought against defendants; that there is not any allegation showing any joint interest in the plaintiffs, who are suing to recover overcharges on separate shipments of goods under different bills of lading and taking place at different times; and that the Canadian railroads have not been made parties to the action.

The bill is dismissed on the merits, with costs to the defendants.