# CROISSANT *v.* EMPIRE STATE REALTY COMPANY.

CONTRACTS, INTERPRETATION OF; CONFLICT OF LAWS; BUILDING ASSOCIA-
TIONS; ACCOUNTING.

1. Contracts are to be governed as to their nature, validity and interpreta-
   tion by the law of the place where made, unless the contracting parties
   clearly appear to have had some other law in view.
2. Where a loan made by a foreign building association to a resident of this
   District, and secured by bond and mortgage on real estate here, was
   arranged here, the papers executed and delivered here, the payments
   on the indebtedness made to a local representative of the associa-
   tion, and there is no provision in any of the numerous instruments
   evidencing the contract, declaring to the contrary, its interpretation
   will be governed by the laws of this District.
3. Where the borrower from a building association surrenders his stock
   to the association upon a mortgage loan being made to him, and the
   stock is not transferred as collateral security for the loan, he becomes
   a creditor of the association, and in a subsequent accounting he is to
   be charged with the amount actually received by him on account of
   the loan, with interest, and credited with all payments made, whether
   by way of dues, interest, or premium. (Following *Armstrong* v. *United
   States Bldg. & L. Asso.* 15 App. D. C. 1, and *Eastern Bldg. & L. Asso.* v.
   *Olmsted,* 16 App. D. C. 387.)

No. 1763. Submitted April 8, 1907. Decided May 7, 1907.

HEARING on an appeal from a decree of the Supreme Court
of the District of Columbia overruling exceptions to and con-
firming a report of the auditor in a suit to foreclose a mortgage.
                                                    *Reversed.*

The COURT in the opinion stated the facts as follows:

This is a suit to foreclose a mortgage upon lands in the Dis-
trict of Columbia, executed by John D. Croissant, testator of

the appellants, Sarah J. Croissant and De Witt C. Croissant, executors, etc.

The bill [filed by the Empire State Realty Company, the appellee] alleged that on August 16, 1894, John D. Croissant, being then a stockholder, to the extent of twenty-five shares of the monthly-payment stock, in the Anglo-American Savings & Loan Association of New York, a corporation organized under the laws of said state, applied to said corporation for a loan or advance of $2,500 upon said shares of stock, offering to secure the same by the assignment, as collateral security, of the certificates for said stock, and by the delivery of two bonds and mortgages upon certain land described in the bill and situated in the District of Columbia. That said application was granted, and said Croissant executed and delivered an assignment of said stock as collateral security, and the said bonds and mortgages. That payments were made by said Croissant in accordance with said undertakings until December 15, 1900, since which date no payments have been made, and the bonds and mortgages have been since then in default. That said corporation became insolvent and was discharged, and receivers were appointed of its property and assets by proceedings in certain courts of the State of New York. That afterwards plaintiff, by regular proceedings, became the purchaser and assignee of all of the claims and demands of said corporation in the District of Columbia, including the bonds and mortgages aforesaid. That said Croissant became insane, and was declared a lunatic by the supreme court of the District of Columbia on May 18, 1904, and defendants (appellants) were appointed committees of his person and estate. That demand of payment has been made of said committees, and refused. The prayer is for a foreclosure of the mortgages aforesaid, and sale of the premises; and reference was also asked to the auditor to state the account of the balance due.

As exhibits to the bill appear the following instruments:
1. Two certificates of the stock of said Anglo-American Savings & Loan Association issued to John D. Croissant July 14, 1894, for thirteen and twelve shares respectively, of the par value of $100 each.

2. Assignments indorsed on the back of each certificate, signed by John D. Croissant on August 16, 1894, to the said corporation. These assignments are absolute on their face.

3. A bond executed by said Croissant August 16, 1894, payable to said association in the sum of $2,600, containing this condition:

"The condition of this obligation is such that if the above bounden John D. Croissant, his heirs, executors, or administrators, shall well and truly pay, or cause to be paid, unto the above named Anglo-American Savings & Loan Association of New York, its successors or assigns, the sum of thirteen hundred (1,300) dollars at its office in New York city, with interest for the same at the rate of 5 per cent per annum until paid, together with a monthly premium of five (5) dollars and forty-two (42) cents for nine years or until the maturity of said shares, and in addition thereto the sum of seven (7) dollars and eighty (80) cents, for the monthly dues on the said thirteen (13) shares, which interest, premium, and dues are payable monthly on the 15th day of each and every month, at the office of the association, in New York city, until the maturity of the said shares, and also all fines which may be imposed by said association for default in payment of said interest, premium, or dues, and shall truly keep and perform all the conditions herein contained and required by the articles of the association of said obligee and by such amendments as may be lawfully made to said articles, then this obligation to be void, otherwise to remain in full force and virtue.

"And it is further hereby expressly agreed that should any default be made in the payment of the said interest, premium, dues, or fines, or any part thereof, and should the same remain unpaid and in arrears for three months, or should any tax or assessment levied or imposed upon the premises described in the mortgage accompanying this bond become due and payable, and remain unpaid and in arrears for three months, then and from thenceforth, that is to say, after the lapse of the said three months in either of the preceding events, the aforesaid principal sum and any and all sums for interest, premium, dues, or

fines shall, at the option of the said association, its successors and assigns, become and be due and payable immediately thereafter, anything hereinbefore contained to the contrary notwithstanding."

4. Another bond executed on the same day for $2,400, containing the same conditions.

5. A mortgage executed by said Croissant and his wife, Sarah J. Croissant, on the same day, reciting an indebtedness of $1,300 secured by said first bond, the terms of which are recited, and conveying certain lots of land in the District of Columbia to said association to secure the payment of the said sum.

6. Another mortgage conveying the same lands to secure the payment of the sum of $1,200, under the obligation of said second bond.

Said bonds and mortgages were all executed and delivered in the District of Columbia, where the mortgagor resided. No instrument is attached or recited relating to the transfers and delivery of the certificates of stock, in support of the allegation of the bill that the same had been done as collateral security. No provisions of the charter and by-laws of the association were recited or offered in evidence.

The answer is by the appellants, who admit their appointment as committees, but allege the death of John D. Croissant, leaving a will devising the real estate conveyed by the mortgage, to them jointly in fee simple, one of them being the surviving wife, and the other the sole heir at law of said John D. Croissant. The third and sixth paragraphs of the answer read as follows: "Answering the allegations of the third paragraph of said bill, respondents deny that the deceased defendant, John D. Croissant, being then a stockholder in the Anglo-American Savings & Loan Association of New York, applied to the same for a loan or advance upon said shares of stock, offering to secure the same by the assignment, as collateral security, of said stock, as in said paragraph mentioned.

"The said Anglo-American Savings & Loan Association of New York was engaged in the business of loaning money upon approved real-estate security, and the said John D. Croissant

applied to and received from said association two separate loans, one in the sum of $1,300, and the other in the sum of $1,200, and to secure the said $1,300 loan he executed and delivered to the said association his bond in the penal sum of said $1,300, the amount of which was secured by a mortgage given by said deceased defendant upon the property mentioned and described in the fourth paragraph of said bill of complaint; and to secure the payment of the said loan of $1,200 he executed and delivered to said association his bond in the sum of $1,200, the payment of which was secured by a mortgage given by said deceased defendant upon the property mentioned and described in the fifth paragraph of said bill of complaint. The originals of said bonds and mortgages are attached to the bill of complaint.

"Said loans were to be repaid in certain instalments at stated intervals until both of said loans of $2,500, and interest, should be repaid.

"As part of the system or scheme by which said stated instalments were to be repaid, all borrowers from said association, including said deceased defendant, were required to have allotted to them one share of stock for every $100 borrowed, so that, when all of the stated instalments should be paid said shares of stock would be matured and the loans thus canceled. Accordingly and simultaneously with the making of said loans of $1,300 and $1,200, respectively, and as part of the same transaction, as hereinbefore stated, said association issued said thirteen shares and said twelve shares, aggregating twenty-five shares of stock, to him. It was never understood, contemplated, or agreed that deceased defendant should be the owner or holder of any stock in said association. On the contrary, it was the distinct understanding of deceased defendant that all of the money paid said association or its agents by him in said instalments should go towards the liquidation and extinguishment of said loans of $2,500, and the legal rate of interest thereon.

"And these defendants insist that all moneys paid by said deceased defendant shall, in any accounting in this cause, be applied to the liquidation of said loans and interest, and that

none of it should be applied to payment of so-called or alleged premiums or dividends on said stock.

"They also admit that simultaneously therewith, and as part of the transaction in making said loans, said association allotted to said John D. Croissant, in the manner hereinbefore stated, the shares of stock in said Anglo-American Savings & Loan Association filed with the bill, and that he did sign his name as appears on the back of said certificates, as part of said transaction.

"6. Answering the sixth paragraph of said bill, these respondents say that from and after the date of the execution and delivery of said bonds and mortgages heretofore mentioned the said John D. Croissant paid to the duly authorized agents and representatives of the said Anglo-American Savings & Loan Association in the District of Columbia at various times up and until the 2d day of July, 1900, the sum of $1,399 towards the liquidation and payment of the said loan of $1,300, and that during the said period he paid to the duly authorized agents and representatives of said Anglo-American Savings & Loan Association in the District of Columbia, towards the liquidation and payment of said $1,200 loan, the sum of $1,294.62, which amounts these defendants say nearly, if not quite, extinguish the indebtedness of said John D. Croissant to the said Anglo-American Savings & Loan Association.

"These defendants further say that they hereby tender themselves ready and willing to liquidate any indebtedness which may be due to the said Anglo-American Savings & Loan Association, or to its successor, the complainant in this cause, upon the amount of said indebtedness, if any, being legally and lawfully ascertained by a proper accounting by the auditor of this court, and that the only reason the said matter has not been heretofore adjusted is because said complainant has insisted upon the payment of an excessive sum, and declined to settle for less."

No testimony appears to have been taken, and the case was referred to the auditor to report the balance due on the obligations.

The report shows that he credited the payments admitted as

made to December 15, 1900, on account of interest and premium, but denied credit for payments made as dues on said stock.

His statement of the account is as follows:

*The Estate of John D. Croissant in Account with the Empire State Realty Company.*

## Dr.

| | |
|---|---:|
| To Loan from Anglo-American Savings & Loan Association August 16th, 1894................ | 1,300.00 |
| To Interest to December 15th, 1900, at 5 per cent per annum ............................... | 411.92 |
| | 1,711.92 |

## Cr.

| | | |
|---|---:|---:|
| By Monthly payment of interest ........ | 411.92 | |
| By Monthly payments of premium....... | 411.92 | |
| By Interest on same to December 15th, 1900 | 65.22 | |
| | | 889.06 |
| Balance due December 15th, 1900.......... | | $822.86 |

With interest from said date at 5 per cent per annum.

                              Jas. G. Payne, *Auditor.*

## Dr.

| | |
|---|---:|
| To Loan from Anglo-American Savings & Loan Association August 16th, 1894 .............. | 1,200.00 |
| To Interest to December 15th, 1900, at 5 per cent per annum ............................... | 380.00 |
| | 1,580.00 |

Cr.

By Monthly payments of interest to December 15th, 1900 ................. 380.00
By Monthly payments as premium to same date ........................ 380.00
By Interest on same to December 15th, 1900    63.33

                                        823.33

    Balance due December 15th, 1900 .......... 756.67
Interest from said date at 5 per cent per annum paid by complainant for insurance ............ 20.00

The only evidence submitted to the auditor consisted of the admissions by the complainant of the sums paid by Croissant to December 15, 1900, the exhibits to the bill, and a receipt for insurance paid by complainant, amounting to $20, which was within the stipulations of the mortgages.

Exception was taken to the report on account of the failure to allow credit for the dues paid by Croissant. The court overruled the exceptions, and passed a decree confirming the auditor's report, and foreclosing the said mortgages for the sum stated in said report as unpaid on account of the loans.

*Mr. R. Golden Donaldson, Mr. B. W. Parker,* and *Mr. Walter F. Donaldson* for the appellants.

*Mr. Jackson H. Ralston, Mr. Frederick L. Siddons* and *Mr. William E. Richardson* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

Although the Anglo-American Savings & Loan Association, whose rights have passed by assignment to the appellee, does not appear to have been organized as the ordinary building and loan association, it has been treated as one of that type by both

parties, on account of the similarity of its practices in respect of stocks and loans, and the requirement as to dues, premiums, and interest.

In the case of the insolvency of a building association, three different views appear to have been taken by the courts of the several States respecting the rights and obligations of borrowing stockholders.

"The first view is that the relation between the society and the borrowing shareholder has been changed by the circumstances to one subsisting between an ordinary creditor and debtor, and that the borrowing shareholder is to be charged with the amount actually received by him, with interest at the legal rate, and credited with all payments made, whether by way of dues, interest, or premium, according to the rule governing partial payments. The second view is that the borrowing shareholder is entitled to credit upon his loan for the amount of interest and premium paid by him, but is not entitled to have the amount of the dues paid by him on account of stock applied upon his loan. The third view differs from the second in that, instead of crediting the borrowing shareholder with the whole premium, it credits him with only the part estimated as unearned." 6 Cyc. Law & Proc. p. 155.

The first of these views is substantially maintained in this jurisdiction. *Armstrong* v. *United States Bldg. & L. Asso.* 15 App. D. C. 1; *Eastern Bldg. & L. Asso.* v. *Olmsted,* 16 App. D. C. 387.

The second was adopted by the auditor in stating the balance due on the loan, and is claimed to be the rule prevailing in the State of New York, where the said Savings & Loan Association was incorporated. The decisive question of the case, therefore, is whether the contract between the original parties thereto is to be governed, in respect of its interpretation, by the law of the State of New York, or of the District of Columbia. The appellee contends that the law of New York must control because the Anglo-American Association was incorporated in that State, and the payments stipulated to be made there.

The place of incorporation is immaterial, as it establishes the

status of the corporation merely as a resident or inhabitant of the State of New York permitted, by comity, to do business in the District of Columbia.

The general principle is that a contract is to be governed by the law with a view to which it was made, and this is a question of intention, to be deduced, when not expressly declared, from the place, terms, character, and purposes of the transaction. The place provided for payment is therefore sometimes of controlling importance when the question in controversy relates to the rate of interest, which may be legal in one jurisdiction and usurious in the other. *Miller* v. *Tiffany*, 1 Wall. 298, 310, 17 L. ed. 540, 543; *Bedford* v. *Eastern Bldg. & L. Asso.* 181 U. S. 227, 243, 45 L. ed. 834, 845, 21 Sup. Ct. Rep. 597. No such question occurs in the case at bar. The general nature of the transaction between the parties shows that the place of payment was a mere incidental and unimportant feature of the contract. This appears plainly from the uncontroverted statement of the answer, that each and every payment, from first to last, was made in the District of Columbia to the representative of the corporation therein. The doctrine is settled that "contracts are to be governed as to their nature, their validity, and their interpretation by the law of the place where they were made, unless the contracting parties clearly appear to have had some other law in view." *Liverpool & G. W. Steam Co.* v. *Phenix Ins. Co.* 129 U. S. 397, 453, 32 L. ed. 788, 796, 9 Sup. Ct. Rep. 469; *Scudder* v. *Union Nat. Bank,* 91 U. S. 406, 413, 23 L. ed. 245, 249. Apparently, the stock subscriptions were obtained by the agents of the corporation in the District of Columbia, and the certificate sent there for delivery. Beyond question, the loan was arranged in the District of Columbia, the bonds and mortgages executed and delivered therein, and the stock reassigned therein, and transmitted to the principal office of the corporation. The obligation of the bonds and mortgages could only be enforced in this jurisdiction.

There being no provision in any one of the numerous instruments evidencing the contract, declaring that its interpretation shall be governed by the laws of any particular jurisdiction, we

think it clear that the conditions stated require it to be governed by the laws of the District of Columbia. *Equitable Life Assur. Soc.* v. *Clements* (*Equitable Life Assur. Soc.* v. *Pettus*) 140 U. S. 226, 232, 35 L. ed. 497, 500, 11 Sup. Ct. Rep. 822.

In that case an insurance policy was issued to an applicant therefor living in Missouri. The application was sent to New York, and the policy was sent to Missouri, and there delivered to the applicant. The uncontroverted allegation in the pleading showed that the premium was actually paid in Missouri to the agent of the company. "Upon this record," said the court, "the conclusion is inevitable that the policy never became a completed contract binding either party to it, until the delivery of the policy and the payment of the first premium in Missouri; and consequently that the policy is a Missouri contract and governed by the laws of Missouri." This conclusion could only have been avoided, if at all in the particular case, by an express provision making it determinable by the laws of New York. *Mutual L. Ins. Co.* v. *Phinney,* 178 U. S. 327, 338, 44 L. ed. 1088, 1093, 20 Sup. Ct. Rep. 906.

Applying the rule of law obtaining in the District of Columbia to this contract, made and apparently intended to be performed therein, the appellants should have been credited with the money paid by Croissant nominally as dues upon stock. *Armstrong* v. *United States Bldg. & L. Asso.* 15 App. D. C. 1, 13; *Eastern Bldg. & L. Asso.* v. *Olmsted,* 16 App. D. C. 387, 408, 409.

Here, as in those cases, whatever may have been the relations of the contracting parties through a subscription to and receipt of the so-called stock, these relations were substantially changed by the surrender of the stock and the substitution of the loan. There is, however, nothing to show that Croissant ever contemplated becoming a mere stockholder, and there was no evidence whatever to sustain the allegation of the bill that he transferred the stock to the corporation as collateral security for the loan, and the allegation to that effect was expressly denied in the answer. In addition the answer also alleged that "as part of the system or scheme by which said stated instalments

were to be repaid, all borrowers from said association, including said deceased defendant, were required to have allotted to them one share of stock for every $100 borrowed, so that, when all of the stated instalments should be paid, said shares of stock would be matured and the loans thus canceled. Accordingly, and simultaneously with the making of said loans of $1,300 and $1,200 respectively, and as part of the transaction, as hereinbefore stated, said association issued said thirteen shares and said twelve shares, aggregating twenty-five shares of stock, to him. It was never understood, contemplated, or agreed that deceased defendant should be the owner or holder of any stock in said association. On the contrary, it was the distinct understanding of deceased that all of the money paid such association or its agents by him in said instalments should go towards the liquidation and extinguishment of said loans of $2,500 and the legal rate of interest thereon." No evidence was offered to controvert this explicit charge of the sworn answer; and the transfers of the certificates were of the same date, and absolute in their terms.

This state of facts would seem, moreover, to render immaterial the question, By the laws of which jurisdiction shall the interpretation of the contract be governed?

It is contended by the appellees that the case of *Armstrong* v. *United States Bldg. & L. Asso. supra,* is differentiated from the case at bar by the fact that in that case the bonds and mortgages required the borrowing member to make not to exceed in any event more than eighty-four monthly payments. In that case the charters and by-laws of the corporation, disclosing the entire scheme of the corporation, were in evidence. The same is true of the other case (*Eastern Bldg. & L. Asso.* v. *Olmsted*). In the case at bar these were not produced, and their provisions can only be inferred from the recitals in the several instruments constituting the contract. And in the bond it is recited that the payments on account of interest, premium, and dues are to be made monthly for nine years, or until the maturity of the shares,—a period of one hundred and eight months, instead of eighty-four.

The decision in *Bedford* v. *Eastern Bldg. & L. Asso.* 181 U. S. 227, 242, 45 L. ed. 834, 844, 21 Sup. Ct. Rep. 597, is not, as contended by appellee, in conflict with the rule declared by this court in the cases before referred to. In that case it appeared as a fact that the stock subscribed for by Bedford had not been taken over or canceled by the corporation, but had been assigned to it as additional security for the payment of his loan. The question determined by this court was not raised. The defense involved two questions only, one in relation to the application of a statute of the State of Tennessee, and the other whether the transaction was usurious.

In accordance with these views as to the legal effect of the contract, the decree must be reversed, with costs, and the cause remanded, with direction to require the auditor to allow the appellants credit, in addition to those given in his account, for all sums of money paid by said John D. Croissant as so-called dues. It is so ordered.                    *Reversed.*