## WASHINGTON GAS LIGHT CO. v. DANN.
### No. 5946.

Court of Appeals of the District of Columbia.

Argued Feb. 5, 6, 1934.

Decided April 2, 1934.

Wilton J. Lambert, Rudolph H. Yeatman, and George D. Horning, Jr., all of Washington, D. C., for appellant.

Joseph D. Sullivan, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Wallace Dann, now deceased, but whom we shall hereafter speak of as appellee, was an engineer, and in the latter part of 1930 was seeking employment. To that end he obtained a letter of introduction to the vice president of appellant (a gas company), and was referred to appellant's chief engineer, named Russell. In the conversation with Russell, appellee informed him that the gas plant at Charles Town, W. Va., could be purchased. Russell was interested, and called in an assistant engineer (named Goddin) in the employ of appellant and instructed him to go with appellee to Charles Town and make a survey of the plant equipment and of the town. In consequence, appellee and Goddin went to Charles Town where they remained two days. They examined the books of the company and made an inspection of the plant and a survey of the town. All the expenses of the trip were borne by appellant. Goddin's report was favorable. Subsequently, Russell talked the matter over with appellant's president, Wood, and appellant's vice president, Woodhead, and Russell thereupon informed appellee that appellant had decided to purchase the plant and would pay as much as $32,500 for it, and directed appellee to return to Charles Town and obtain an agreement for purchase from the owner of the plant. Appellee requested that he be furnished with credentials from appellant which he might show as evidence of his ability to make the deal; whereupon Russell wrote and delivered to him a letter dated October 20, 1930, reading as follows: "We have examined with much interest the information which we have received from you relative to the Charles Town Gas Company, and the writer has personally visited the town and looked over the general situation. If the situation develops as we see it at the present time we will wish to purchase this company very promptly, provided it stands a further examination and a price can be agreed upon which is in line with the real value. This letter will authorize you to negotiate in our behalf for the purchase of the property. As we have several such negotiations under way, very prompt action on your part and the part of others involved will be appreciated."

Appellee inquired of Russell about his compensation, and was told that he would be paid the difference between $32,500 and the price for which the plant could be purchased. The day after the letter was written, appellee and two of appellant's employees went to Charles Town at the expense of appellant, and on this visit appellee obtained a thirty-day option on the bonds and stock of the company at a total price of $25,700. Appellee reported this to Russell, who expressed surprise at the modest price asked for the property, and insisted that in the circumstances appellee's compensation should be reduced to a flat commission of $3,300, and to this reduction appellee consented. A few days later Russell reported to the president of appellant the information obtained by his engineers on their various visits to Charles Town. In this report, after speaking of some necessary improvements to the plant, he says: "I should expect, under new management, the first year to earn bond interest and depreciation and have a stock profit of $2,100 toward Federal income tax and common dividends. Through additional customers and some househeating business, we should be able to raise this dividend to 10% in subsequent years."

About the middle of November following, Woodhead informed appellee that his company had decided not to make the purchase, and in February, 1931, appellee sued appellant for services rendered in obtaining the offer from the Charles Town Company to sell its stock and bonds to appellant. The action was begun against appellant, Russell, and Woodhead, based on a contract of employment. The case was tried to a jury. A directed verdict was had as to Woodhead; the jury returned a verdict in favor of Russell, but found against appellant, and judgment against it went for the plaintiff Appellant appealed, and has filed twenty-five assignments of error, but in argument and brief counsel say that all these assignments "logically reduce themselves to two main propositions of law; first, that the alleged contract declared upon was ultra vires on the part of appellant"; and, second, "that the official position of Russell, chief engineer of the appellant company, was not such that his authority to bind the appellant upon the contract declared upon might be inferred by the appellee."

We agree with counsel that the answers to these two points are conclusive of the rights of the respective parties.

Appellant's charter was granted in 1848; the purpose of its incorporation being to manufacture and sell gas to be used in the city of Washington. There is no provision in the charter granting or denying power to purchase stocks and bonds in other corporations, but in 1913 Congress passed a general statute (37 Stat. 938), creating the Public Utilities Commission for the District of Columbia, in which in section 8, par. 54 (Title 26, D. C. Code, 1929, § 77) it is provided as follows: "It shall be unlawful for any * * * gas corporation * * * directly or indirectly, to acquire the stock or bonds of any other corporation incorporated for or engaged in the same or similar business as it is, unless authorized in writing to do so by the commission, and every contract, transfer, agreement for transfer or assignment of any such stock or bonds without such written authority shall be void and of no effect."

Under the authority of this paragraph, appellant had from time to time obtained from the Commission permission to purchase, and had purchased, the stock and bonds of the Rosslyn Gas Light Company of Virginia, the Georgetown Gas Light Company, and the Washington Gas Light Company of Montgomery county, Md., and, at the time of the negotiations with appellee, appellant, through its proper officers, was having inspections made of gas plants in various nearby cities for the purpose of considering the availability of these cities for the development of its (appellant's) business.

At the conclusion of the evidence, appellant's motion for a directed verdict was refused, as was also appellant's prayer for a charge to the jury that it (appellant) had no right or authority to enter into the alleged contract. It is obvious that the court below was of opinion that the act of 1913 to which we have referred enlarged appellant's corporate powers and invested in it a conditional right to acquire the option. In that view, the court submitted to the jury the further question whether the company had duly entered into the contract declared on.

■■ Appellant tells us that the court below was wrong in both respects. As to the first point, appellant says that it possessed no right or power under its charter or under the Utilities Act to enter into a contract to purchase stocks and bonds of the Charles Town Company, and that appellee in dealing with it was bound to take notice of this limitation upon its powers. It is undoubtedly the general principle that the powers of a corporation are such only as are conferred by its charter or the general laws of the state of its incorporation. Thomas v. Railroad Company, 101 U. S. 71, 82, 25 L. Ed. 950. It is also a well-recognized doctrine that a corporation without express authority so to do may not acquire the stock of another corporation. De La Vergne Ref. Co. v. German Inst., 175 U. S. 40, 20 S. Ct. 20, 44 L. Ed. 65. As appellant had no corporate power to purchase stocks and bonds of the Charles Town Company, a contract to purchase, unless permissible under the Utilities Act, would have been unenforceable because ultra vires.

■■ This brings us to consider whether the provisions of the Utilities Act extend or enlarge appellant's corporate powers in the respects mentioned. The record shows that appellant has itself construed the Utilities Act as extending its corporate powers, for over a period of years, in reliance upon the provisions of the act, it has purchased the stocks and bonds of other gas companies located and operating in adjacent territory but outside the District of Columbia, and it has continued to hold these stocks and bonds with the approval of the Utilities Commission. We think a fair construction of the Utilities Act would indicate that it was intended by Congress as a chart by which the rights and duties of utilities operating in the District of Columbia should be controlled. The provisions in paragraph 54 to which we have already called attention were undoubtedly intended to limit the right of public utility corporations in the acquisition of the stocks of other utility corporations except under the supervision and control of the Commission. To that extent the provision is a limitation upon the right of acquisition where such right previously existed. To told also that it enlarged the corporate powers to the extent of permitting such acquisition under the supervision of the Commission where such right did not previously exist would be going farther than is necessary in a decision of this case, though it is not amiss to point out, as we have already pointed out, that this interpretation has been consistently acted on by appellant and acquiesced in by the Commission. We think that in these circumstances, to hold that appellee in the agreement made with appellant for services to be rendered it was charged with notice of a different and narrower limitation of appellant's corporate powers, and therefore was subject to be defeated in his effort to collect a legitimate debt by a plea of ultra vires, would be to work a legal wrong and to create a legal fiction to defeat the ends of justice. The contract sued

on in this case is no more than a contract on the part of an individual with a corporation for the performance of personal service. The fact that the particular service related to a single act rather than to different or diversified acts does not change its aspect. It would be unreasonable, we think, to say that the clerks detailed out of appellant's general office in the ordinary course of business to secure data with relation to the condition of another utility corporation could be defeated in a suit for their salaries by a defense based upon the lack of corporate power on the part of their employer to purchase the stocks of such corporation, and in saying this we are by no means unmindful of the rule that it is the duty of everyone dealing with the corporation to take notice of the limitation of its corporate powers, but there should be, and there must be, a distinction between corporate powers as to which the limitation is clear and those in which it is, as in the case at bar, in a somewhat neutral zone. In this case appellee, in accordance with appellant's instructions, spent his time, knowledge, and experience in the service of appellant. He was instructed to obtain an offer from the owner of the Charles Town Company for a sale of that property at a price satisfactory to appellant. He obtained the option on the stocks and bonds, and was promised as compensation the sum of $3,300. He knew that appellant had purchased the stocks of other gas corporations over a period of years, and was at the very time engaged in an extensive survey of nearby cities with a view to the enlargement of its activities. In such a case he had a right to assume that the service imposed on him by appellant's responsible officers, and which in the circumstances was within the apparent scope of their authority, was likewise within appellant's corporate powers.

The conclusion we reach in this case is similar to that reached by the Circuit Court of Appeals in the Ninth Circuit in Quicksilver Mining Co. v. Anderson, 245 F. 67. In that case the president of a mining company engaged the plaintiff to procure rights of way, obtain subscriptions, and organize a corporation for the building of an electric road from the mine to another point. He performed the service, and was not paid, and the company defended on the ground that the enterprise in and about which he was employed was beyond the scope of the powers conferred on the mining company by its charter and not within the usual and ordinary business of the corporation, and that therefore the president of that company was without authority to employ him. The court re-jected this contention, and held that the company could not defeat the recovery on the ground that the building of a road was beyond its charter powers.

We think the same rule should apply with greater reason in this case, for here, as we have seen, the right of appellant to do the very thing it now complains of as ultra vires, namely, the purchase of other utilities outside the District, had been consistently done by it with the acquiescence and consent of the regulatory authority of the District over a long period of time.

This leaves for consideration only the question whether the court below was correct in leaving the case to the jury. We think the question should be answered in the affirmative. The evidence shows that appellee was sent by appellant's vice president, to whom he had applied for employment, to appellant's chief engineer (Russell). In the course of the ensuing conversation, appellee spoke of the possibility of the purchase of the Charles Town gas plant. Russell showed interest, and thereafter for two or three months appellee was engaged, together with employees of appellant, in getting together the necessary data and information. When this was satisfactorily done, Russell furnished appellee with a letter authorizing him to negotiate with the owners of the Charles Town Company for its purchase. This negotiation ending successfully, a fixed amount of compensation was proposed by Russell and agreed to by appellee. Thereafter, for reasons of its own, appellant declined to go ahead with the purchase or to recognize appellee's right to the agreed compensation. Appellant asked the court below for a binding instruction on the theory that Russell was merely the manager of its engineering department and that he had neither actual nor apparent authority to bind the corporation in the employment of appellee for the purpose of obtaining an option on the stocks and bonds of the Charles Town Company. We have examined the record and find what we think is ample evidence to sustain the authority of Russell to employ appellee, and likewise evidence to show that Russell in his negotiations with appellee was reporting to, and acting under the instructions of, appellant's president and vice president. The court below, in submitting the evidence of authority on the part of Russell to employ appellee and also in submitting the question whether he had in fact employed him and agreed to pay him the compensation sued for, instructed the jury as favorably to appellant as it could properly demand. We

think on the whole case there were sufficient facts shown from which the authority of Russell might be fairly and legitimately inferred by the jury.

It follows, therefore, that the judgment below should be, and is, affirmed.

Affirmed.