**Charles B. CARY, Plaintiff,**

v.

**U. S. HOFFMAN MACHINERY CORPORATION, Defendant.**

**C. A. No. 303-55.**

United States District Court
District of Columbia.

March 5, 1957.

Donald Cefaratti, Jr., W. E. Cumberland, Washington, D. C., for plaintiff.

Nathan H. David, Washington, D. C., for defendant.

PINE, Judge.

This case comes before me on motions for summary judgment filed by plaintiff and defendant respectively. The complaint alleges that plaintiff was employed by defendant over a period from September 1923 to November 1946, when he was retired by defendant because he had reached the age of 65 years; that

on the occasion of his retirement, he and defendant entered into an oral contract, at which time defendant's agent represented to plaintiff that, in view of his long and devoted service to defendant, his agreement to refrain from actively engaging in business with a competitor of defendant, and his agreement to assist the defendant in its business affairs, defendant would pay to plaintiff $150 monthly for the term of his life; that, relying on these promises, plaintiff retired in November 1946, did not compete with defendant nor obtain any other type of employment though able so to do, and assisted in the affairs of defendant; and that defendant paid him $150 a month from November 1946 to August 1954, inclusive, at which latter time these payments were terminated.

By answer, defendant admits the payments as alleged, but denies each and every other allegation in the complaint, and specifically denies that any contract was entered into between plaintiff and defendant.

The testimony by deposition and inferences reasonably deducible therefrom are likewise inconclusive factually. Several examples follow:

Finla L. Jones, formerly branch manager of defendant in Baltimore, testified that he had supervision of defendant's activities as sales representative in the District of Columbia, and that he informed plaintiff in Baltimore that he was to be retired and was to receive $150 a month pension for life; that if he took this retirement, he would not be able to work for another machinery company, and that he believed he said that the company wanted his good will and cooperation, all of which was pursuant to instructions from John C. Weingarten, his immediate supervisor.

Plaintiff testified that after his talk with Jones, and at the latter's direction, he had a talk with John C. Weingarten in New York. Weingarten was District Manager for defendant, in charge of territory including the District of Columbia. He stated, according to plaintiff's deposition, that the company "wanted to put a young man on the territory, that they wanted to take care of me, and certain restrictions, that I couldn't work for anybody else selling equipment, and that I would cooperate with the boys here in the office, and they would pay me $150 a month." His testimony was silent on whether he then and there accepted the offer, although it was "acceptable" to him, but he returned to Washington and in a short time commenced performance under the new arrangement.

The witness Weingarten testified that he was told by Mr. Bruce, President, Mr. Bowdoin, Vice-President, and Mr. Green, General Manager, of defendant, to "take Charlie (plaintiff) and arrange to work with him and arrange for him to give him $150 a month to take care of his termination, not his termination, but $150 a month as long as—well, it didn't say as long as the—what do you call it?—and also to have Charlie agree to certain points of a new man going in the territory, and Charlie was to supervise this man, and also Charlie was to call on customers. For all this he was to be paid $150 a month." Later on, according to his testimony, he discussed the matter with plaintiff "along the same lines," but "did not discuss time." Further in his deposition, he testified that "the terms of this arrangement were * * * that the Hoffman Company was to pay $150 so long as he cooperated in the affairs of the Company and did not engage in a competitive business." This was Weingarten's "understanding of the agreement" derived from his "discussions from these three officers." Weingarten testified that it was "agreed" to by plaintiff.

Plaintiff cooperated and did not engage in a competitive business. As to these points, there is no dispute, but as above pointed out, there is a genuine issue as to the terms of the agreement, at least as to its duration.

It would therefore appear to be clear that plaintiff is not entitled to a summary judgment. As to defendant's motion for summary judgment, it claims

that, irrespective of this factual issue, it nevertheless is entitled to judgment. The basis for this claim is the contention that the purported agreement, in any event, is unenforceable because it is one terminable at will, was not authorized or ratified by defendant, and is barred by the statute of frauds.

■ Turning to defendant's first point, namely terminability at will, the Court of Appeals of this jurisdiction had a similar state of facts before it in Riefkin v. E. I. Dupont, 53 App.D.C. 311, 290 F. 286, 287. There the plaintiff contended that he was induced to enter into an agreement of employment for an indefinite period by representations that if he would resign his position he held with the United States Government and enter the employ of defendant, to take charge of the purchase of coal, "he would be given permanent employment in that capacity, so long as he rendered satisfactory service and was loyal to the defendant's interests." The evidence tended to show that he rendered satisfactory service, was loyal to the interests of the defendant, and was discharged without cause. The defendant contended, as here, that the contract entered into between the parties " 'was an employment at will, terminable by either party at any time,' " but the Court, in upholding the contract, found that the more reasonable view of their arrangement was "that the parties contemplated that, so long as the defendant continued in a business requiring the purchase of coal and the plaintiff performed loyal and satisfactory service, he would continue to be employed in the capacity specified in the contract." In the instant case, plaintiff has cooperated and refrained from engaging in competitive business, which latter may be compared with the consideration given up by the plaintiff in the Riefkin case. Plaintiff was an experienced salesman with many years of acquaintance with the trade in the District of Columbia area, and it was of benefit to defendant, when they concluded to replace him by a young man, to exact an agreement that he would not enter into any competing business and also would assist the young man and cooperate generally for the benefit of the company under the new arrangement. On the authority of the Riefkin case, I find against defendant on this first point.

■ On the point that the contract was unauthorized, it will be recalled that the arrangement between the parties was directed by the President, Vice President, and General Manager of defendant, and although neither the by laws nor minutes of defendant expressly authorized the arrangement, the authority of Weingarten and Jones to bind defendant is a jury question. This view finds adequate support in Washington Gas Light Co. v. Dann, 63 App.D.C. 142, 70 F.2d 746. Moreover, defendant has received the benefits over a period of years and is deemed to have ratified the contract by accepting the benefits if it had knowledge of them. Union Gold Mining Co. v. Rocky Mt. National Bank, 96 U.S. 640, 24 L.Ed. 648; Pittsburgh & St. L. Railway Co. v. Keokuk & H. Bridge Co., 131 U.S. 371, 381, 9 S.Ct. 770, 33 L.Ed. 157; Indianapolis Rolling Mill v. St. Louis, etc. Railroad, 120 U.S. 256, 7 S.Ct. 542, 30 L.Ed. 639. Whether it had such knowledge is also a question for the jury to decide on the evidence and reasonable inferences therefrom. District National Bank v. Maiatico, 61 App.D.C. 242, 60 F.2d 1078.

■ With reference to the statute of frauds, it need only be stated that, inasmuch as the purported agreement could have terminated within a year, the statute of the District does not apply. Campbell v. Rawlings, 52 App.D.C. 37, 280 F. 1011.

■ I therefore conclude that defendant's motion for summary judgment can not be granted under the law of the District of Columbia. However, defendant contends that the law of New York governs this case. To this view, I cannot subscribe. According to Weingarten's testimony, plaintiff "agreed" in New York. According to plaintiff's

testimony, there is an inference that he did not then and there accept the offer, but returned to Washington and accepted it by performing thereunder in the District of Columbia shortly thereafter. On that hypothesis, the agreement was consummated in the District, a typical case of an informal unilateral contract where the place of contracting is where the act takes place which makes the promise binding. But aside from this, with minor exceptions, the agreement has been performed in its entirety in the District of Columbia throughout the succeeding years.[1] Under these circumstances, the law of the District governs. Seeman v. Philadelphia Warehouse Co., 274 U.S. 403, 407, 47 S.Ct. 626, 71 L.Ed. 1123; London Assurance v. Companhia de Moagens do Barreiro, 167 U.S. 149, 161, 17 S.Ct. 785, 42 L.Ed. 113; Coghlan v. South Carolina R. R. Co., 142 U.S. 101, 111, 12 S.Ct. 150, 35 L.Ed. 951; Hall v. Cordell, 142 U.S. 116, 12 S.Ct. 154, 35 L.Ed. 956; Equitable Life Assurance Society v. Clements, 140 U.S. 226, 232, 11 S.Ct. 822, 35 L.Ed. 497; Pritchard v. Norton, 106 U.S. 124, 128, 1 S.Ct. 102, 27 L.Ed. 104; Croissant v. Empire State Realty Co., 29 App.D.C. 538, 539.

But, assuming that defendant is correct and that the law of New York governs, the result would be the same. On the first point, see Heaman v. E. N. Rowell Co., 236 App.Div. 34, 258 N.Y.S. 138, which cites with approval the Riefkin case, supra. On the question of lack of authority or ratification, see Schwarz v. E. Regensburg & Sons, 223 N.Y. 521, 119 N.E. 1076; Usher v. N. Y. Central, etc. Company, 76 App.Div. 422, 78 N.Y. S. 508. Cf. Greaves v. American Institute for Scientific Research, 114 Misc. 413; 187 N.Y.S. 420. On the statute of frauds, Eckhart v. Plastic Film Corporation, D.C.Conn., 129 F.Supp. 277 and cases cited therein, persuade me that plaintiff's claim would not be barred by

the New York statute of limitations. Bayreuther v. Reinisch, 264 App.Div. 138, 34 N.Y.S.2d 674, relied on by defendant, is distinguishable on the facts.

Both motions for summary judgment will therefore be denied. Counsel will submit orders accordingly.

---

**1.** He attended two conventions and assisted in a law suit in Virginia, but he cooperated and abstained from engaging in competing business in the District of Columbia area where he previously had been employed. There was no performance in New York.